Argued February 5, affirmed March 17, 1971

TRANSAMERICA TITLE INSURANCE COM-
PANY, *Appellant, v.* TED L. MILLAR,
INC. ET AL, *Respondents.*
482 P2d 163

*Douglass M. Hamilton*, Portland, argued the cause for appellant. With him on the briefs were Douglas G. Houser, James L. Hannam, and Bullivant, Wright, Johnson, Pendergrass & Hoffman, Portland.

*Frederic D. Canning*, Oregon City, argued the cause for respondent Ted L. Millar, Inc. With him on the brief were Dale Jacobs, and Hibbard, Jacobs, Caldwell & Canning, Oregon City.

*Calvin H. Luetjen*, Portland, argued the cause for respondent Oregon Pacific Electric Co. With him on the brief were Sandeberg, Recken & Luetjen, Port-land.

HOLMAN, J.

This is an action for damages based on the alleged negligence of defendants in causing a fire which destroyed personal property belonging to plaintiff. Pursuant to a jury verdict, judgment was entered for defendants. Plaintiff then moved the court to set aside the judgment and to grant a new trial on the basis of juror misconduct. The motion was denied and plaintiff appealed.

During *voir dire* examination of the jury panel, one of plaintiff's attorneys named a number of persons involved in the action and asked juror number one whether she was acquainted with any of the names. One of the names mentioned was Ted Millar, president of one of the defendants. Plaintiff's attorneys later asked juror number 11 if any of the

names that had been mentioned meant anything to him. Juror number 11 stated that they did not.

After two and one-half days of trial, the presentation of evidence in the case was concluded. The court recessed for lunch before hearing closing arguments and instructions to the jury. During this recess, juror number 11 was observed by one of plaintiff's attorneys talking with Mr. Millar in the hall area outside of the courtroom. The trial judge was immediately notified in the presence of defense counsel, but by the time the trial judge reached the area of conversation, juror number 11 and Millar were gone.

Plaintiff's attorneys did not pursue the matter further by requesting the court to interrogate the juror or Millar concerning the conversation. The case proceeded and the jury returned a verdict in favor of both defendants. Subsequent to the verdict, plaintiff's attorneys requested and were granted an opportunity to interrogate both juror number 11 and Mr. Millar under oath about their conversation.

Both the juror and Mr. Millar admitted that a conversation had taken place. The juror testified that when the name "Millar" was mentioned in the *voir dire* proceedings, he thought that counsel had said the name "Miller." This name meant nothing to him. He further testified that, at this time, Millar was not present in the courtroom. Later, when Millar entered the courtroom, the juror recognized him and, after associating the name "Miller" with "Millar," the juror concluded that Millar might be the son of Ted Millar, Sr., who had lived in the same neighborhood as the juror in about 1944. Regarding this acquaintance the juror stated: "His folks, even though they were neighbors and just close by, we never did take

with them very friendly, in fact, I don't think I spoke more than two words to his family in those days." He said that at that time, Ted Millar, Jr., was just a young boy and that the only contact the juror had with the boy was when he occasionally had to chase Millar away from his construction projects.

The juror went on to testify that, during the noon recess, he saw Millar in the hallway and asked him if he was the son of the Ted Millar who had lived in his neighborhood. When Millar replied that he was, the juror reminded him of the circumstances of their earlier acquaintance. The juror told Millar that he was glad to see that he had done so well in the intervening years.

The juror voted for a defendants' verdict on every jury vote. However, he denied that it was possible that his acquaintance with Millar could have affected his decision or vote. He stated that Millar "was just like the rest of the people in this case and whatever happened in this court, I did not show any partiality to Ted Millar." He admitted that, as a jury member in other cases, he had been instructed by the judge that it was improper to talk with persons interested in a case. However, he stated that, at the time of the conversation, he did not realize that his actions were improper or that they would interfere with the proceedings.

Millar's testimony was substantially the same as the juror's. He did testify, though, that he was in the courtroom during a portion of the time when *voir dire* was being conducted. However, he could not testify as to whether or not he entered the courtroom before the time that juror number 11 was questioned.

By affidavit of counsel, plaintiff states that,

had the fact of the juror's acquaintance with Mr. Millar been known, he would have exercised one of his peremptory challenges on the juror.

Plaintiff contends that he did not have a fair trial and that he was entitled to a new one under the provisions of ORS 17.610 (1) and (2), which provide as follows:

> "A former judgment may be set aside and a new trial granted on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
>
> "(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial. ·
>
> "(2) Misconduct of the jury or prevailing party.
> "\* \* \* \* \*."

It argues that the juror was guilty of misconduct either by giving false testimony on *voir dire* concerning his acquaintance with Millar or by failing to disclose his acquaintance to the court after he discovered that he did know one of the persons about whom he had been asked. Plaintiff also points out that the admitted conversation shows that the juror was disposed to be kindly toward Millar and his interests, and that the juror admitted he had previously been instructed that it was not proper to talk to anyone interested in litigation on which he was sitting.

■■ There is no doubt that the juror was guilty of misconduct. However, that is not the end of the inquiry. After learning of circumstances that would lead a reasonable person to suspect that a situation might exist which was inimical to a fair trial, plaintiff had a choice to make. It could either ask the judge to

investigate the circumstances or waive anything that such an investigation would have disclosed. It could not wait and gamble on the outcome of the case and then raise the question if the results were adverse. We believe the following language in *Wills v. Petros et al*, 225 Or 122, 357 P2d 394 (1960) to be appropriate:

"'* * * [W]hen a party having knowledge of an error or an irregularity during the trial fails to call it to the attention of the court and remains silent, speculating on the result, he is deemed to have waived the error, and the denial of a motion for a new trial based upon that ground presents no reviewable question * * *.'" 225 Or at 129.

■ Plaintiff contends that there was the possibility that the verbal exchange was entirely innocent and that there was not any effective way of interrogating the juror, prior to the close of the case, without intimidating him and giving rise to potential prejudice. In making an inquiry under similar circumstances, trial judges do not normally disclose the source of their information and usually it is unnecessary to do so. There is no showing here that the juror was aware that his conversation had been observed by one of plaintiff's attorneys. Thus, there is no indication here that plaintiff, necessarily, would have been prejudiced by an investigation.

Moreover, if it appeared that because of the investigation plaintiff would not thereafter receive a fair trial, plaintiff could then have moved for a new trial. There is no reason to think that such a motion would have been denied, even though the investigation showed that the circumstances of the conversation were innocent, if it appeared that plaintiff had had legitimate grounds for initiating the investigation in the first place. Although plaintiff's position was an

undesirable one, we do not believe that the dilemma of plaintiff was of such proportion as to justify its being put in the position of enjoying the best of both worlds, especially, where the public's interest in the finality of the judicial process is at stake.

The judgment of the trial court is affirmed.