Argued and submitted March 10, reversed and remanded October 29, 2008

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# BRETT ALAN VEATCH,
*Defendant-Appellant.*

Washington County Circuit Court
D052111T; A132040

196 P3d 45

Richard E. Oberdorfer argued the cause for appellant. With him on the brief was Oberdorfer Law Firm LLC.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Edmonds, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

Edmonds, J., concurring in part and dissenting in part.

## ROSENBLUM, J.

This appeal calls on us to determine whether the police denied defendant's right to consult privately with counsel before deciding whether to take an Intoxilyzer test and to determine the adequacy of a curative instruction given to the jury by the trial court in response to a defense motion for a mistrial. We conclude that the police did not deprive defendant of a reasonable opportunity to obtain legal advice and, thus, that the trial court correctly denied his motion to suppress evidence related to the Intoxilyzer test. However, we also conclude that the curative instruction that the court gave was inadequate and, thus, that the court erred in denying defendant's motion for a mistrial. Accordingly, we reverse.

Defendant was convicted of driving under the influence of intoxicants (DUII), ORS 813.010(1). He makes three assignments of error on appeal. We reject the first without discussion. In his second assignment, defendant challenges the denial of a motion for a mistrial made after the arresting officer testified that defendant had asked to speak with his attorney before deciding whether he would submit to an Intoxilyzer test. The trial court gave a curative instruction but denied the motion. In defendant's third assignment of error, he contends that the trial court erred in denying his motion to suppress evidence related to the Intoxilyzer test. In support of that assignment, he asserts that the arresting officer did not leave the room while he left voice mail messages with his attorney and called his mother to ask if she could refer him to another attorney.

We take the facts pertinent to the motion to suppress from the record of the suppression hearing and the facts pertinent to the mistrial motion from the record of defendant's trial. Defendant was arrested on suspicion of DUII and placed in the back of a police car. While the arresting officer was talking to another officer who had arrived to transport defendant to the Washington County Jail, defendant took his cell phone from his pocket and attempted to make a call. Officer Berry took the phone from him and then drove him to the jail. At the jail, Berry asked defendant if he would agree to

take an Intoxilyzer test to determine his blood alcohol content. Defendant stated that he wanted to contact his family's attorney first. Pursuant to jail policy, defendant's hands remained handcuffed behind his back, so Berry dialed the telephone number and then placed the receiver on defendant's shoulder so he could hold it between his shoulder and head. It was approximately 4:00 a.m., and the attorney did not answer his telephone. Defendant left two voice mail messages asking him to return his call at the jail. Defendant then called his mother, asking her to refer him to another attorney. Berry testified at the suppression hearing, "It was my understanding that his mother was unaware of any other attorneys that the family used." Berry offered to let defendant look for another attorney in the telephone book, but, Berry testified, defendant "didn't desire to do that."

After defendant left the messages for his attorney, Berry waited half an hour for the attorney to call back. When he did not return the call, Berry then told defendant that he needed a decision as to whether defendant would agree to proceed with the Intoxilyzer test. Defendant initially remained silent, which Berry took as a refusal to take the test. He printed a "refusal card" from the Intoxilyzer machine. Moments later, defendant stood up and walked over to the machine, so Berry decided to let him submit a sample. Defendant blew into the mouthpiece, but he did not blow hard enough for the machine to get a sample. Berry recorded his attempt as another refusal.

Before trial, defendant made a motion to suppress the evidence related to the Intoxilyzer test, arguing that he was denied the right to private consultation with counsel before deciding whether to consent to the test. The court denied the motion.

At defendant's trial, before the jury was selected, defense counsel, the prosecutor, and the trial court discussed pretrial rulings that a different judge had made earlier. Defense counsel stated that the judge had ruled that there should be "no mention of [defendant's] telephone calls whatsoever because that's invocation of a right * * *. And the second prong was no mention of witness Gerry Chase, who's a lawyer, because the right to call a lawyer is also part of the

counsel right * * *." The prosecutor stated that she had a different recollection of the pretrial ruling, acknowledging that "we can't say he was a lawyer," but contending that the judge had ruled that evidence about calls could come in. The court ruled that there could be no mention of telephone calls unless the defense opened the door to such evidence and that, even then, "[w]e don't need to know who it was to * * *."

In her opening statement to the jury, the prosecutor stated that defendant had attempted to use his cell phone in the back of the police car. Defense counsel interrupted, stating, "Your Honor, I have a matter for the court." The court responded, "No, I know what it is and it's fine." After opening statements had concluded, the jury was sent out of the courtroom. Defense counsel stated that, "for the record," he was moving for a mistrial. The court interjected that it understood that the motion was based on the prosecutor's mention of the cell phone, adding, "[I]t's close, but I knew that's [what] you were going to do and I would overrule it."

In its case-in-chief, the state called Berry to testify. After he testified about defendant's arrest and transport to the jail, his direct examination continued as follows:

"Q. Okay. Did you—first of all, are you trained to operate the Intoxilyzer?

"A. Yes.

"Q. Okay. While at the station, did you read the defendant his rights and consequences?

"A. Yes.

"Q. Did you ask him if he would take the test?

"A. Yes, I did.

"Q. How did he respond?

"A. He wanted to call his lawyer before making that decision.

"[Defense counsel]: Objection. I have a matter for the court.

"THE COURT: Sustained. And if I hear that word again—

"[Prosecutor]:   Yeah.

"THE COURT:   —you're going to start all over again.

"[Prosecutor]:   Right. And, officer, we talked about this.

"THE COURT:   To be real honest with you, a person has a right to call their lawyer and you're not supposed to make any inferences from that, since they have a right to do it.

"And so the State's not even supposed to bring it up. They brought it up. The seven of us are going to totally ignore it, though they couldn't. Go ahead.

"[Prosecutor]:   Okay. * * * Officer, just so you understand. We talked about this outside. Just answer the questions I ask. Okay?

"[Berry]:   All right.

"[Prosecutor]:   No talk of—

"[Berry]:   Okay.

"[Prosecutor]:   —phone calls or lawyers. So, you asked—at some point you asked the defendant would he take a breath test?

"A.   Yes."

Berry went on to testify that defendant did not answer and that he initially printed a "refusal card" but then allowed defendant to give a breath sample. Berry stated that he recorded the attempt as a refusal because, in his view, defendant had not given "an honest effort."

After Berry finished testifying, the state rested its case, and the jury was excused for lunch. Defendant then moved for a mistrial "based on the comment about the lawyer." The court responded, "Okay. That's denied still."

Several witnesses testified in defendant's behalf, including defendant himself. Defendant testified that he had consumed one and a half beers with lunch in the early afternoon but had no more alcohol between then and the time he was arrested more than 12 hours later. The jury ultimately found defendant guilty of DUII.

On appeal, defendant challenges the denial of his suppression and mistrial motions. We begin with the motion to suppress. Defendant renews his challenge to the introduction of the evidence related to the Intoxilyzer test. He contends that Berry should have given him privacy both when he left the voice mail messages for his attorney and when he called his mother to ask her to refer him to another attorney.[1] He relies on a passage in *State v. Durbin*, 335 Or 183, 194, 63 P3d 576 (2003), in which the Supreme Court stated that, to avoid violating the right to counsel, the police "might find it preferable to inform the driver of their intent to administer the breath test and then, if the driver requests counsel, to allow the driver a reasonable time in which to seek legal advice, in private, before beginning the required observation period [that precedes the test]." Defendant relies in particular on the phrase "to seek legal advice," arguing that the court held that confidentiality is required not only when an arrested driver is speaking with an attorney, but also while the driver is *seeking* counsel—that is, while the driver is attempting to locate and establish contact with an attorney.

Defendant reads too much into that phrase in *Durbin*. Read in isolation, the phrase "to seek legal advice" could be understood to include attempting to locate or contact an attorney. However, the context in which the court used the phrase in *Durbin* demonstrates that "seeking advice" means actually conferring with counsel. The issue that defendant raises here was not even in play in *Durbin*. Rather, the only questions before the court were (1) whether "the right to consult privately with counsel is inherent in the right to counsel that Article I, section 11, provides"; (2) whether "the police must afford an arrested driver the opportunity to consult privately with counsel, even if the arrested driver does not make an independent request to consult privately"; and (3) whether the police are justified in limiting the "right to

---

[1] Defendant does not argue that Berry violated his right to counsel by remaining in the room without telling defendant that, if he contacted counsel, Berry would leave the room. *See State v. Matviyenko*, 212 Or App 125, 130, 157 P3d 268 (2007) (holding that, if an officer intends to remain in the room until the call is made, the onus is on the officer to inform the arrestee before the call is made that, once he or she contacts an attorney, privacy will be afforded). Because defendant does not make that argument, we do not consider it.

consult privately" if the observation period has already begun. *Id.* at 187-88. Whether the right extends to attempting to locate and establish contact with an attorney was simply not at issue.

Moreover, in answering the first question, the court stated that confidentiality is necessary to encourage the full and frank communication between attorneys and their clients that is essential to the rendition of appropriate legal advice and thus to the right to counsel. *Id.* at 190 (citing *State v. Jancsek*, 302 Or 270, 274, 730 P2d 14 (1986) ("Lawyers can act effectively only when fully advised of the facts by the parties whom they represent[.]")). It concluded that the "defendant's right to counsel included the right to *confer* privately with counsel and that his invocation of the right to counsel was sufficient to request an opportunity to *confer* privately * * *." *Id.* at 191 (emphasis added). It concluded further that "the presence of the officer within earshot *while [the] defendant consulted with his lawyer* breached the confidentiality of the lawyer-client communication and violated [the] defendant's right to counsel under Article I, section 11." *Id.* at 192 (emphasis added); *see also id.* at 192-93 (concluding that the fact that the officer had already begun the 15-minute observation period did not justify the officer's continued presence "while [the] defendant *consulted* with counsel"; the fact that the observation period would have to be terminated does not justify a violation of the defendant's "right to *consult* with his lawyer privately"; if a request for counsel is made after the observation period has begun, it is ordinarily not " 'too late' to require that the *consultation* with counsel be confidential" (emphasis added)). In short, the court held in *Durbin* that privacy must be afforded while an arrested driver confers with an attorney, not while the driver attempts to locate or establish contact with an attorney.

■■ Consistently with *Durbin*, we conclude that defendant's reasonable opportunity to consult with counsel was not violated because Berry remained in the room while defendant left messages and asked his mother for a referral. Indeed, as we noted in *State v. Matviyenko*, 212 Or App 125, 130, 157 P3d 268 (2007), "an officer may be justified in remaining in the room *until contact with an attorney is made*

in order to ensure that the suspect actually calls an attorney rather than using the telephone for some inappropriate purpose." (Emphasis added.) The trial court did not err in denying the motion to suppress.

We turn to defendant's mistrial motions. Defendant separately assigns error to the denial of his motion based on the prosecutor's reference to the cell phone call in her opening statement and his motion based on Berry's reference to his invocation of the right to counsel. Because it is dispositive, we begin and end with the latter motion.

■       At the outset, we must determine whether the asserted error is preserved. The state concedes that the trial court understood that defendant intended to seek a mistrial after Berry testified that defendant wanted to call his lawyer before deciding whether to take the breath test.[2] It argues, nonetheless, that the actual motion for a mistrial—which came after Berry finished testifying and the state rested—was untimely and therefore did not preserve the issue for appeal. The state also argues that defendant failed to raise any objection to the sufficiency of the trial court's instruction to the jury to disregard the testimony or to the prosecutor's admonition to Berry not to mention "phone calls or lawyers." The state appears to take the position that, because defendant did not object to the trial court's instruction, he cannot now complain about the court's failure to grant a mistrial.

We agree with the state, in some respects. Defense counsel's statement—"I have a matter for the court"—immediately following Berry's testimony was sufficient to alert the trial court that he intended to move for a mistrial. The court's response shows that it understood counsel's intent: It immediately threatened to grant a mistrial, warning the prosecutor that she was "going to start all over again" if defendant's invocation of the right to counsel was mentioned again, and it instructed the jury to disregard the testimony. Furthermore, when defendant expressly made the motion after Berry finished testifying, the court stated,

---

[2] In its brief, the state notes that, "[w]hen defendant objected, the trial court sustained his objection and immediately gave a curative instruction to the jury—necessarily showing that, in its discretion, mistrial was not required and that any harm would be cured by its instruction."

"That's denied *still*." (Emphasis added.) We agree with the state that the trial court understood that defendant intended to move for a mistrial.

We do not agree, however, that defendant made the actual motion too late to preserve the issue for appeal. "In ruling on a motion for a mistrial, a trial court must decide whether to grant the motion, to cure the effect of inappropriate conduct or testimony by giving a proper instruction instead, or to do nothing at all." *State v. Evans*, 211 Or App 162, 166, 154 P3d 166 (2007), *aff'd*, 344 Or 358, 182 P3d 175 (2008). The purpose behind requiring an immediate mistrial motion is to allow the court to take prompt curative action if the court believes it is warranted. *State v. Shafer*, 222 Or 230, 235, 351 P2d 941 (1960) ("The time to move for a mistrial is when the allegedly prejudicial act occurs, not after the incident has been allowed to pass by, for then it is too late for the trial judge to caution the jury and mend the harm.").

In this case, when defense counsel asserted that he had "a matter for the court," the court understood what the "matter" was. As the dissent points out, a trial court is vested with broad discretion in controlling the trial proceedings. *See State v. Rogers*, 330 Or 282, 300, 4 P3d 1261 (2000). Rather than giving defendant an immediate opportunity to make his mistrial motion outside the presence of the jury, the court here took the actions that it believed to be appropriate in response to the offending testimony: It warned the prosecutor of the possibility of a mistrial and gave the jury a curative instruction. Had defense counsel expressly moved for a mistrial at the outset, rather than signaling his intent by merely saying, "I have a matter for the court," there is no reason to believe that the court's response would have been any different. Under the circumstances, defendant should not be penalized on preservation grounds because the court chose to respond to the situation as it did.

The dissent contends that defendant was required to make an immediate motion for a mistrial despite the fact that the court gave a curative instruction. 223 Or App at 463 (Edmonds, J., dissenting). Under the circumstances of this case, we disagree. Where it is clear that the trial court understands that the defendant intends to seek a mistrial, and it

responds by giving a curative instruction, the need for an *immediate* mistrial motion is obviated. Again, the point of requiring that the motion be made immediately is to allow the court to take prompt curative action, thus averting the need for a mistrial. *Shafer*, 222 Or at 235; *see also State v. Wilson*, 121 Or App 460, 470-71, 855 P2d 657, *rev den*, 318 Or 61 (1993) (where it is clear that the trial court would not take curative action in response to a mistrial motion, preservation principles do not demand that the motion be made immediately); *State v. Lundbom*, 96 Or App 458, 462, 773 P2d 11, *rev den*, 308 Or 382 (1989) (same). When the court gives a curative instruction without waiting for an anticipated mistrial motion to be made expressly, the underlying purpose of that preservation requirement is fulfilled.

The dissent asserts that another preservation principle is at play here, arguing that defendant used his motion for a mistrial as a fallback position in the event that he was not acquitted. 223 Or App at 469 (Edmonds, J., dissenting). In some circumstances, it might be reasonable to infer that the defense counsel made a tactical decision to delay making a motion for a mistrial in order to assess how the trial was unfolding and whether it was likely that the jury would return a favorable verdict—in which case, a mistrial would not be desirable. Such a tactical decision undermines the assertion that the defendant cannot obtain a fair trial. In this case, however, defendant's counsel waited only a short time before making the motion; indeed, he made it at the next break in the trial, after Berry had finished testifying. It seems unlikely that counsel was waiting to see how devastating his cross-examination of Berry would be to the state's case before deciding whether to make the motion.

In short, we conclude that, with respect to Berry's testimony, defendant's mistrial motion does not run afoul of preservation requirements.

■ We next consider the state's contention that defendant's failure to object to the sufficiency of the curative instruction nullified his mistrial motion for purposes of this appeal. We conclude that it did not. Neither we nor the Supreme Court have ever held that, when a trial court gives a curative instruction in response to objectionable testimony,

the defendant must object to the sufficiency of the instruction in order to be permitted to raise on appeal an otherwise properly preserved mistrial motion based on that testimony. In short, if the court chooses to give a curative instruction rather than declare a mistrial, any error in denying a preserved mistrial motion remains preserved regardless of whether the defendant objected to the sufficiency of the instruction. *See State v. Bowen*, 340 Or 487, 508-11, 135 P3d 272 (2006), *cert den*, 127 S Ct 1258 (2007) (considering whether the trial court's cautionary instructions were sufficient to protect against prejudice to the defendant and, thus, whether the court abused its discretion in denying the defendant's mistrial motion despite having expressly concluded that the defendant had failed to preserve any claim of error respecting the instructions).

We turn to the merits of defendant's assignment of error. Defendant contends that the jury was likely to infer from Berry's testimony that he wanted to call his attorney because he was conscious that he was guilty of driving under the influence. In defendant's view, the testimony was particularly damaging given that his defense at trial was that he had not consumed any alcohol for at least half a day before he was arrested and thus was completely sober. He contends that a jury would be very disinclined to believe that a person who was actually sober would ask to call an attorney before deciding whether to take a breath test. Defendant also argues that the trial court's curative instruction was not sufficient to prevent the jury from drawing an adverse inference about his guilt from Berry's testimony. The state agrees that it is improper to admit evidence of a defendant's invocation of constitutional rights, but it argues that the curative instruction was sufficient to ensure that defendant received a fair trial.

We review the denial of a motion for a mistrial for abuse of discretion, and we will not reverse a conviction on that basis unless the defendant was denied a fair trial. *State v. Smith*, 310 Or 1, 24, 791 P2d 836 (1990). A reference by the prosecutor or a witness to the fact that the defendant exercised a constitutional right, such as the right to counsel or the right to remain silent, may prejudice the defendant's ability

to have a fair trial if the jury is likely to infer that the defendant exercised the right because he or she was guilty of the charged offense. *See State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600, *cert den*, 434 US 849 (1977) ("There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury."); *State v. Nulph*, 31 Or App 1155, 1162, 572 P2d 642 (1977), *rev den*, 282 Or 189 (1978) ("Such evidence is generally inadmissible because the state should not benefit from the improper, although perhaps logical, inference that a defendant who invokes his right to counsel is guilty of the charged offense. To permit the introduction of evidence from which such an inference is likely to be drawn would penalize one for exercising his rights." (Citation omitted.)). "The fact that a prosecutor's conduct is not intentional does not affect a defendant's fundamental right to a fair trial." *State v. Grenawalt*, 86 Or App 96, 98, 738 P2d 232, *rev den*, 304 Or 405 (1987).

■      The context in which a reference is made to the defendant's invocation of a constitutional right may be such that the jury's attention is directed away from the adverse inference of guilt based on the invocation. Where the context makes such an inference unlikely, the trial court does not abuse its discretion if it denies the defendant's motion for a mistrial. *State v. Williams*, 49 Or App 893, 621 P2d 621 (1980), is illustrative. In that case, the defendant was charged with sexual abuse. During the state's opening argument, the prosecutor said the following:

"About the only thing that the defendant ever said in response to this whole episode was made the morning after the apartment was searched. That was somewhere around June 26th. And that took place because Ray Broderick, an investigator for the district attorney's office, returned after executing the warrant the night before because he left his flashlight there. Defendant was the only one there and he said, 'Cinda took your flashlight and she'll try and give it back to you. She's got it at her work.' Broderick says fine, he's getting ready to leave and the defendant keeps saying, 'Hey, what's the big deal? What's the big deal? What's going on? What's the big deal? What's this all about?' Broderick says, 'Listen, you know, somebody said, or you said that you

wanted to talk to your attorney first and I don't want to talk to you about the incident.' He kept saying, 'What's the big deal? What's going on?' So Broderick said 'Well, the big deal is you showing these pictures to Nancy, taking pictures of Nancy, and the other things that Nancy has said.' His response was, 'Hey, big deal. She wanted to take her clothes off. So what?' Well, that's why we're here.' "

*Id.* at 896. The defendant moved for a mistrial, which the trial court denied.

On appeal, we noted that "[t]he context in which the comment arose indicate[d] that [the] defendant was trying to get the detective to discuss the matter, and the reference merely stated the detective's reply." *Id.* at 898. In other words, the jury's attention was likely focused on the defendant's attempt to discuss the matter rather than on his earlier invocation of the right to counsel. We concluded that "the comment was not made for the purpose of drawing attention to [the] defendant's exercise of his right to counsel," and that it "did not occur in a context where inferences prejudicial to [the] defendant were likely to be drawn by the jury." *Id.*

Where the context is such that the jury's attention is *not* directed away from the inference of guilt that the defendant's invocation of a constitutional right may give rise to, a mistrial may be necessary. *State v. White*, 303 Or 333, 736 P2d 552 (1987), illustrates that point. There, the defendant and two other people were separately tried for the murder of a single victim. The defendant in *White* was tried last. During jury selection, defense counsel told the potential jurors that the defendant would testify in the trial. In the state's opening statement, the prosecutor informed the jury that the defendant had been called to testify in the trial of one of the codefendants and had refused to do so. The defendant moved for a mistrial. Out of the presence of the jury, the prosecutor told the court that his purpose in telling the jury that the defendant had refused to give a story in the prior trial was to discredit whatever exculpatory story he would tell at his own trial. The court denied the mistrial motion. *Id.* at 336-37.

The Supreme Court reversed. It stated that a reference by a prosecutor to a defendant's exercise of constitutional rights is " 'usually reversible error * * * if it is done in a

context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury.' " *Id.* at 341 (quoting *Smallwood*, 277 Or at 505-06). The court pointed out that the prosecutor had deliberately drawn the jury's attention to the defendant's exercise of the right to remain silent. Given that context, the court held that there was a " 'presumably harmful effect.' " *Id.* at 342 (citation omitted).

Even where the context is such that the jury is likely to draw adverse inferences about the defendant's guilt, the prejudicial effect may be cured by an appropriate jury instruction. *Id.* "[J]urors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so." *Smith*, 310 Or at 26. However, if the jury is likely to have drawn an adverse inference, it is not assumed to have been able to follow a curative instruction that merely told it to disregard the improper statement. *See, e.g.*, *White*, 303 Or at 343; *State v. Mullenburg*, 112 Or App 518, 520-23, 829 P2d 98 (1992).

For example, the trial court in *White* instructed the jury that the defendant's decision not to testify was not probative and that

> "in no way are you to take that into account or in any way to discuss or consider what [the prosecutor] has said in regard to that. It's not evidence in this case. It's not to be taken by you as any evidence of the case or have any place in this case."

303 Or at 338. The Supreme Court stated that, if a trial court is to cure the prejudicial effect of an improper reference to a defendant's exercise of a constitutional right, the court "must do something more than blandly instruct the jury to forget that it has just seen a white bear." *Id.* at 343. Although the court expressed confidence that trial courts can "tailor an instruction that will point out the reason that the jury is to disregard" such comments, it concluded that the instruction that the trial court gave "did no more than tell the jury that [the] defendant's refusal to testify in [the codefendant's] trial was irrelevant." *Id.* at 343-44. *See also State v. Jones*, 279 Or 55, 62, 566 P2d 867 (1977) (stating that there may be cases in

which "the testimony which the jury is instructed to 'disregard' is so prejudicial that, as a practical matter, 'the bell once rung, cannot be unrung' by such an admonishment").[3]

The question in this case, then, is whether the context of Berry's statement that defendant invoked the right to counsel was such that the jury was unlikely to have drawn an

---

[3] Although both we and the Supreme Court have stated that the "presumably prejudicial effect" of an improper comment can be cured by an appropriate jury instruction, see White, 303 Or at 342; State v. Alvord, 118 Or App 111, 115, 846 P2d 432 (1993), our research has revealed only one reported Oregon appellate case in which a curative instruction was held sufficient where the context was such that the jury's attention was not directed away from an adverse inference. See Bowen, 340 Or 487. That case did not involve a reference to the exercise of a constitutional right. In Bowen, the defendant was charged with two counts of aggravated murder. On cross-examination of the defendant, the prosecutor attempted to impeach the defendant's credibility by asking about prior felony convictions. The defendant responded that he had been convicted of manslaughter, but the conviction was more than 15 years old and thus was too old to be admissible for that purpose under OEC 609. After the defendant moved for a mistrial, the court instructed the jury that prior convictions could be used solely to test credibility and that the jury could not consider any convictions that were more than 15 years old. Id. at 502. At the end of the trial, the court again instructed the jury that it could use prior convictions only for purposes of impeachment and not as evidence of propensity to commit crimes. Id. at 505.

The Supreme Court held that, under the circumstances, the instruction was adequate:

"Here, as stated above, immediately following the prosecutor's objectionable question, the trial court gave a curative instruction to the jury to disregard any convictions that were not within the permissible 15-year period. That instruction was significantly stronger than the statement given in White; by contrast, it included an explanation of the sole purpose for admitting prior convictions and the reason why the reference to defendant's manslaughter conviction was to be disregarded. Additionally, the trial court expressly instructed the jury that defendant's prior convictions could not be used as evidence of his propensity to commit the crimes charged in the present case. '[J]urors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so.' Moreover, on the facts of this record, it is difficult to say that the prosecutor's behavior, though careless, was a deliberate attempt to admit improper evidence.

"Finally, the admissibility principle that the prosecutor's actions offended here involved an evidentiary rule and not a constitutional right, as in White. Thus, the 'presumably harmful effect' of the prosecutor's conduct in this case was not of such magnitude that we can conclude that a proper curative instruction could not ameliorate any potential prejudice."

Id. at 510-11 (citation omitted).

In no case of which we are aware involving an improper reference to a constitutional right in a context likely to give rise to an inference adverse to the defendant have we or the Supreme Court held that a curative instruction was sufficient to remedy the prejudice.

adverse inference about defendant's guilt and, if not, whether the resulting prejudice was cured by the trial court's instruction to the jury.

■ We conclude that Berry's statement likely gave rise to an adverse inference of guilt. The jury was informed that defendant had invoked the right to counsel in response to being asked whether he would submit to a potentially incriminating breath test. Berry's statement was not incidental to some other point that the jury was more likely to be focusing on. As defendant argues, under the circumstances, a jury would likely infer that a person arrested for DUII would not ask for an attorney unless he or she was concerned about failing the breath test—in other words, a jury would likely see it as a tacit admission of guilt. Because nothing in the context diverted the jury's attention away from that inference, we cannot say that it is unlikely that the jury drew it.[4]

■ We turn, therefore, to the sufficiency of the trial court's curative instruction. As noted above, the court instructed the jury that "a person has a right to call their lawyer and you're not supposed to make any inferences from that, since they have a right to do it. And so the State's not even supposed to bring it up. * * * The seven of us are going to totally ignore it * * *." The court gave the instruction immediately after Berry made the statement, which is a factor in the effectiveness of a curative instruction. *See Smith*, 310 Or at 27-28 (quick intervention by the trial court helps cure potential prejudice); *cf. State v. Halford*, 101 Or App 660, 663,

___

[4] The dissent asserts that defendant's invocation of the right to counsel did not manifest a personal belief in his guilt and that the inference of guilt is as tenuous in this case as it was in *Smallwood*, in which the Supreme Court affirmed the trial court's denial of the defendant's motion for a mistrial. 223 Or App at 471-73 (Edmonds, J., dissenting). In *Smallwood*, the defendant was charged with murder. He did not deny having killed the victim, but he asserted that he had acted under an extreme mental or emotional disturbance. The jury was informed that he had asked for his counsel to be present when he was examined by a psychiatrist for the state. 277 Or at 505. Under those circumstances, the jury would likely find it entirely unremarkable that the defendant asked to have counsel present. In this case, defendant was arrested for DUII at 3:30 in the morning, was asked to take a breath test, and was informed that there would be adverse consequences if he refused. It is much more difficult to see why a sober person in those circumstances would want to call a lawyer before deciding whether to take the test. Contrary to the dissent's assertion, the jury in this case was considerably more likely to draw an inference of guilt from the request for counsel than the jury in *Smallwood* was.

792 P2d 467 (1990) (an instruction at the close of trial that the defendant had an absolute constitutional right not to testify and that his decision not to testify could not be considered an indication of guilt was insufficient to cure prejudice because it was not timely given). Nevertheless, given the highly prejudicial implication of Berry's testimony, we conclude that the instruction did not "unring the bell." The instruction was, to be sure, less "bland" than the one given in *White*, but, in our view, informing the jury that a person has a right to call an attorney and that the state is "not even supposed to bring it up" does not negate the inference that the person chose to exercise the right because he was conscious of his guilt.[5]

The dissent asserts that, unless we can demonstrate that *no* curative instruction could have cured the prejudice to defendant's right to a fair trial, the trial court acted within the bounds of the discretion granted to it by the law. 223 Or App at 470 (Edmonds, J., dissenting). That is incorrect. We need only conclude—as we do—that the instruction that the court actually gave was insufficient to cure the prejudice. We need not speculate as to whether a different instruction would also have been insufficient.

The dissent further contends that, even if the jury could infer that defendant's request to consult with his attorney was an admission of guilt, "there is nothing in the record that warrants the majority's conclusion that the jury would have been unable to follow the trial court's instruction in that regard." *Id.* at 473 (Edmonds, J., dissenting). We do not doubt that jurors take their obligations seriously. Nevertheless, we think it self-evident that, once a juror has drawn the inference that the defendant tacitly admitted guilt, it would be exceedingly difficult to disregard both the evidence that gave

---

[5] Although defendant did not object to the prosecutor's admonition to Berry not to mention "phone calls or lawyers," in our view, it is still appropriate to consider the prosecutor's statement as part of the context in determining whether the trial court's curative instruction was adequate. We would reach the same conclusion without considering the prosecutor's statement, but it is significant that the prosecutor highlighted the very fact that the court had just instructed the jury to ignore. The question, ultimately, is whether, by the time the jury deliberated, the adverse inference "bell" had been sufficiently "unrung." By making the ringing more noticeable, the prosecutor's admonition lessened the effectiveness of the curative instruction.

rise to that inference and—more importantly—the inference itself.

In sum, although it is true that the trial court "is in the best position to assess the impact of the complained-of incident and to select the means (if any) necessary to correct any problem resulting from it," *State v. Wright*, 323 Or 8, 12, 913 P2d 321 (1996), it is also true that a trial court abuses its discretion when it selects a means that does not produce a permissible, legally correct outcome. *Rogers*, 330 Or at 312. Because Berry's testimony was prejudicial to the defense and the trial court's instruction did not cure that prejudice, the court abused its discretion in denying defendant's motion for a mistrial.

Reversed and remanded.

**EDMONDS, P. J.,** concurring in part, dissenting in part.

I agree with the majority's ruling regarding defendant's motion to suppress; however, I disagree, for the reasons that follow, with the majority's ruling that the trial court erred when it denied defendant's motion for a mistrial.

During trial, a police officer testified in response to a question from the prosecutor regarding how defendant responded when asked whether he wanted to take an Intoxilyzer test. The officer testified that defendant said that "[h]e wanted to call his lawyer before making that decision." The majority concludes that the prejudice to the defense arising from the officer's testimony could not be remedied by the court's curative instruction and, therefore, defendant was denied a fair trial. In my view, the majority's reasoning and conclusion depart from the applicable standard of review and from controlling precedents.

The threshold issue is whether defendant's motion for a mistrial was timely. After defendant objected during the officer's direct examination, defendant cross-examined the witness, and the state conducted redirect examination. The objection occurred at transcript page 126. Defendant's cross-examination begins at transcript page 137. The state's redirect examination commences at transcript page 146, and the

state rested its case-in-chief at transcript page 148. At transcript page 149—23 pages after defendant's initial objection—defendant moved for a mistrial "based on the comment about the lawyer." The trial court responded, "Okay. That's denied still."

A ruling on a motion for mistrial is not preserved unless it is made timely. In *State v. Barone*, 328 Or 68, 90, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000), the Supreme Court held that "[t]o preserve error, a motion for a mistrial must be made timely, *i.e.*, it must be made as soon as the objectionable statement or event occurs." As the court explained in *State v. Shafer*, 222 Or 230, 235, 351 P2d 941 (1960), "[t]he time to move for a mistrial is when the allegedly prejudicial act occurs, not after the incident has been allowed to pass by, for then it is too late for the trial judge to caution the jury and mend the harm."

The motion for a mistrial in this case occurred after the state finished direct examination, after defendant and the state completed cross-examination and redirect examination respectively, and after the state rested its case-in-chief. Under the applicable case law, the motion for a mistrial came too late to preserve the claim of error. Nevertheless, the majority carves out an unprecedented exception to the applicable case law. It initially concludes that the state concedes "that the trial court understood that defendant intended to seek a mistrial after Berry testified that defendant wanted to call his lawyer before deciding whether to take the breath test." 223 Or App at 452. It follows, in the majority's view, that it was not necessary for defendant to move for a mistrial after the trial court gave its curative instruction and that the motion that was made at the end of the state's case was timely. The majority errs in both respects.

First, the majority reads the state's purported concession out of its context. The entire statement in the state's brief asserts,

"When defendant objected, the trial court sustained his objection and immediately gave a curative instruction to the jury—necessarily showing that, in its discretion, mistrial was not required and that any harm would be cured by its instruction. *If defendant believed that this instruction*

*was insufficient, or that the prosecutor's admonition to the witness not to mention 'lawyer' was prejudicial, he was obligated to make that objection known immediately to the court.* Instead, he waited to move for a mistrial until the conclusion of this witness's testimony and until after the state rested its case in chief. At that point it was too late."

(Emphasis added.)

The state's argument, when understood in its proper context, is correct. The law imposed an obligation on defendant to make a motion for a mistrial immediately after the trial court gave its curative instruction if he was dissatisfied with the effect of the instruction. Had he done so, the court could have assessed the need to give additional instructions to cure any remaining prejudice or to grant a mistrial. Defendant never afforded the trial court the timely opportunity to exercise its discretion that the policy of the law affords, as discussed more fully below. Instead, the trial court could reasonably believe that defendant abandoned any intention to move for a mistrial at that time by remaining silent and proceeding to cross-examine the officer.

Under *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000), defendant, in order to preserve the issue he raises on appeal, was obligated to explain to the trial court why its curative instruction was not sufficient to remedy the prejudice that had occurred at the time that the instruction was given. In *Wyatt*, the Supreme Court held that the defendant's failure to object to a particular sanction imposed by the trial court for the violation of the reciprocal discovery statutes or, in the alternative, to argue for some other sanction, failed to preserve a claim on appeal that the trial court erred in failing to consider the availability of a less onerous sanction. 331 Or at 343. The *Wyatt* court's holding is based on its discussion of the applicable case law and the basic policy underlying the doctrine of preservation that flows from those cases. As the court explained, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *Id.*

The rule of *Wyatt* is applicable to the circumstances in this case where defendant did not move for a mistrial immediately after the court gave its curative instruction, thereby depriving the trial court of the opportunity to exercise its discretion and correct any error. The governing case law unquestionably requires a party to make an immediate motion for a mistrial in order to preserve that issue for appeal. *See, e.g., State v. Walton*, 311 Or 223, 247-48, 809 P2d 81 (1991) (holding that a motion for a mistrial regarding testimony to which the trial court had sustained an objection made after two other witnesses had testified was untimely); *State v. Montez*, 309 Or 564, 601, 789 P2d 1352 (1990) (holding that no timely objection was made to a portion of the prosecutor's closing arguments when the defendant did not move for a mistrial at the time that the statements were made but instead responded to the statements in his closing argument); *Shafer*, 222 Or at 235 (holding that a motion for a mistrial made at the commencement of a later session of the trial was untimely because "[t]he time to move for a mistrial is when the allegedly prejudicial act occurs, not after the incident has been allowed to pass by, for then it is too late for the trial judge to caution the jury and mend the harm").

Nonetheless, the majority reasons,

"In this case, when defense counsel asserted that he had 'a matter for the court,' the court understood what the 'matter' was. * * * Rather than giving defendant an immediate opportunity to make his mistrial motion outside the presence of the jury, the court here took the actions that it believed to be appropriate in response to the offending testimony: It warned the prosecutor of the possibility of a mistrial and gave the jury a curative instruction. Had defense counsel expressly moved for a mistrial at the outset, rather than signaling his intent by merely saying, 'I have a matter for the court,' there is no reason to believe that the court's response would have been any different. Under the circumstances, defendant should not be penalized on preservation grounds because the court chose to respond to the situation as it did."

223 Or App at 453.

The majority's speculation that the court would have summarily denied a motion for a mistrial had it been made

immediately is unsupported by the record. There is no indication from the record about what the trial court would have done had defendant made an immediate motion for a mistrial. For all that this court knows, the court's ruling on defendant's belated motion for a mistrial was based on the lack of timeliness when the court responded, "Okay. That's denied still." More importantly, at no time—neither at the time that he objected nor at the time that he moved for a mistrial—did defendant explain to the trial court why its curative instruction was inadequate to cure any prejudice. The ruling by the trial court was followed by the instruction to the prosecutor, "if I hear that word again * * * you're going to start all over again." Not once after the court gave its cautionary instruction and the prosecutor resumed her examination of defendant did defendant object or ask to be heard out of the presence of the jury concerning this issue until after the state rested. Additionally, the sum total that defendant told the trial court when he did move for a mistrial at the end of the state's case was, "I'll respectfully move for a mistrial based on the comment about the lawyer." As is evident, defendant never informed the trial court at any time why its curative instruction was legally insufficient to cure any prejudice. In effect, the majority's reasoning requires the trial court to be prescient concerning any purported inadequacy in the curative instruction.

Also, in support of its reasoning, the majority posits that "[w]hen the court gives a curative instruction without waiting for an anticipated mistrial motion to be made expressly, the underlying purpose of that preservation requirement is fulfilled." 223 Or App at 454. There is no legal support for the majority's ruling. The majority relies on *State v. Wilson*, 121 Or App 460, 855 P2d 657, *rev den*, 318 Or 61 (1993), and *State v. Lundbom*, 96 Or App 458, 773 P2d 11, *rev den*, 308 Or 382 (1989), which do not stand for the proposition that the majority advances. In *Wilson*, defense counsel objected during the state's rebuttal closing argument, and the trial court sustained the defendant's objection to the prosecutor's remark. Defense counsel did not move for a mistrial until after the jury returned its verdict. We held that

> "defendant's motion for a mistrial at a later time on that ground was untimely. It is incumbent on defendant to move

for a mistrial at the time that the allegedly improper remarks were made. Accordingly, we decline to consider defendant's argument."

121 Or App at 470.

Also, during closing arguments, the prosecutor in *Wilson* argued that the victim was in therapy. The defendant objected on the ground that there was no evidence that the child was in therapy. The trial court overruled that objection. We held under *Lundbom* that "[b]ecause defendant's objection was overruled, his motion for a mistrial on the above ground was timely." 121 Or App at 470-71. In *Lundbom*, the defendant did not request the court to give curative instructions or to declare a mistrial on the ground that the prosecutor had referred to the defendant's expert witness and counsel as "pimps." However, he did move for a new trial on grounds of misconduct of the prevailing party. The trial court denied the motion, and, on appeal, we framed the issue as whether the trial court committed reversible error when it denied that motion after failing to sustain the objections to the prosecutor's remarks. We reversed the defendant's conviction and remanded for a new trial, explaining,

"The trial court, therefore, should have sustained the objections. Instead, it overruled defendant's first objection and merely noted his second. For all practical purposes, that action foreclosed the possibility that defendant would obtain a curative instruction. Given the trial court's earlier failure to sustain defendant's objections, it committed reversible error when it failed to grant him a new trial.

"Finally, it will not do to argue that, because defendant failed to request curative instructions or a mistrial, we should not consider the error. The trial court's responses to his objection made it obvious that it was not disposed to grant either request. Given the circumstances, we believe that defense counsel did all that was required of him. Moreover, counting defendant's motion for a new trial, the trial court had three opportunities to correct the prejudice to defendant. The error was adequately preserved."

96 Or App at 462.

Our holdings in *Wilson* illustrate why the majority's reasoning is flawed. In this case, as in *Wilson*, the trial court

sustained defendant's objection. In *Wilson*, because the trial court sustained the defendant's objection, the defendant's motion for a mistrial at a later time on that ground was held to be untimely. In contrast to what occurred in this case, the trial court in *Wilson* also overruled the defendant's objection to the prosecutor's argument that the victim was in therapy. Under the reasoning in *Lundbom*, the *Wilson* court concluded that, for all practical purposes, the trial court's overruling of the defendant's objection foreclosed the possibility of the trial court giving a curative instruction. That reasoning is inapplicable here where the trial court did in fact give a curative instruction. Thus, the majority is simply wrong when it concludes that *Wilson* and *Lundbom* hold that when a court gives a curative instruction without waiting for an anticipated mistrial motion to be made expressly, the underlying purpose of preservation is satisfied.[1]

The majority's ruling—that, when a trial court gives a curative instruction without waiting for an anticipated mistrial motion, no mistrial motion is required to be made in order to preserve the issue for appeal—is wrong for an additional reason. In *Wyatt*, 331 Or at 343 n 6, the court discussed the various policy reasons for requiring preservation in a trial court as a predicate to review on appeal, such as ensuring that parties are not taken by surprise, ensuring that parties are not misled or denied opportunities to meet an argument made by an opponent, and promoting the efficient administration of justice and the saving of judicial time by avoiding the necessity of an appeal. Among the policy reasons mentioned in *Wyatt* is that the preservation rule is intended to prevent litigants from speculating on the outcome of a trial

---

[1] The giving of a curative instruction without waiting for an anticipated mistrial motion does not preclude a defendant from asserting a motion for a mistrial despite the instruction. Under the facts of this case, defense counsel verbally manifested his agreement with the trial court's sustaining of his objection and made no further objection after the court cautioned the jury. Nothing in this record suggests that defendant could not have voiced a further objection to the trial court's cautionary instruction or moved for a mistrial as he apparently intended when he told the trial court at an earlier point in time, "I have a matter for the court." Indeed, defendant had moved for a mistrial on a different ground earlier in the trial, so it is apparent that he was familiar with that procedure.

and then appealing if that outcome is adverse to their interests. *Id.* (citing *Denham et ux v. Cuddeback*, 210 Or 485, 493, 311 P2d 1014 (1957)).

In this case, defendant's belated motion for a mistrial gave rise to an inference that he was using the motion as a fallback position in the event that he was unlikely to be acquitted. The failure to grant a mistrial in this case is reversible error only if the officer's testimony was so prejudicial as to have denied defendant a fair trial. *State v. Sparks*, 336 Or 298, 327, 83 P3d 304 (2004). If, in fact, a fair trial was no longer available to defendant after the officer's testimony and after the trial court gave its curative instruction, then the law required him to move for a mistrial immediately. However, rather than moving for a mistrial immediately, defendant elected to cross-examine the officer. Thus, defendant's election not to move for a mistrial at the time of the instruction runs afoul of the principle that litigants will not be permitted to speculate on the outcome of their trial strategy in lieu of making a timely motion and then appeal when that outcome is adverse to their interests. *See, e.g., Transamerica Title Ins. v. Millar*, 258 Or 258, 482 P2d 163 (1971) (holding that a party is deemed to have waived an error or irregularity that occurs during trial where the party has knowledge of the error or irregularity, fails to call it to the attention of the court, and remains silent, speculating on the outcome of the trial).[2] In sum, because defendant did not afford a timely opportunity to the trial court to rule on his motion for a mistrial, his claim of error on appeal must be rejected under the governing precedent of this court and the Supreme Court. Had the majority ruled correctly on the issue of timeliness, there would be no need for any further discussion of defendant's claim of error.

---

[2] The majority also asserts that "[i]t seems unlikely that counsel was waiting to see how devastating his cross-examination of Berry would be to the state's case before deciding whether to make the motion." 223 Or App at 454. But the majority's speculation about defense counsel's state of mind is based on an improper focus. The rule of law that a motion for a mistrial must be made in a timely fashion in order to be legally cognizable on appeal flows from policy reasons that are unrelated to a particular litigant's motivation. One of the policy reasons for the rule of preservation is to prevent parties from using the procedure of an untimely motion for a mistrial as a fallback position at a time when the trial court can no longer assess the harm or prejudice that existed at the time when the motion should have been made.

Assuming that defendant's motion is timely, the majority proceeds to attempt to explain why the trial court exceeded the boundaries of its discretion in denying it. In order to frame the issue properly, it is important to be mindful that the overarching rule of law to be applied in this case is that "[i]t is well established that a trial court generally possess broad discretion to control the proceedings before it." *State v. Rogers*, 330 Or 282, 300, 4 P3d 1261 (2000). A trial court's authority to exercise reasonable discretion does not evaporate merely because a party asserts his constitutional right to a fair trial during a trial; rather, such an exercise of authority will be reviewed to determine if the trial court exceeded the boundaries of discretion that have been granted to it. *State v. Langley*, 314 Or 247, 257-60, 839 P2d 692 (1992). If there is only one correct outcome in this case regarding defendant's motion for a mistrial—that no curative instruction could have cured the prejudice to defendant's right to a fair trial—then the trial court had no discretion to deny a motion for a mistrial. *Rogers*, 330 Or at 312. That is the proposition that the majority must demonstrate for its result to be correct. On the other hand, if the curative instruction given by the trial court was a legally permissible alternative, then the trial court acted within the bounds of the discretion granted to it by the law. *Id.* Finally, appellate courts owe some deference to trial court's determinations of whether prejudice can be rectified when a motion for a mistrial is made because trial courts are in the best position to assess the extent of prejudice and what measures are necessary to rectify it whereas an appellate court's assessment of prejudice is confined to a cold record. *State v. Pratt*, 316 Or 561, 574, 853 P2d 827, *cert den*, 510 US 969 (1993).

In general, it is improper to admit evidence of a defendant's invocation of constitutional rights. *State v. Larson*, 325 Or 15, 23-25, 933 P2d 958 (1997). Thus, the admission of evidence of the exercise by a defendant of the rights which the constitution gives him could constitute reversible error if it is done in a context that permits a trier of fact to draw a likely inference of guilt from the admission of the evidence. Here, of course, there was no improperly admitted evidence; the trial court sustained defendant's objection and instructed the jury to disregard it. But, even assuming

that the court's instruction could not undo the effect of the officer's instruction on the jury, the officer's testimony would not warrant the grant of mistrial unless there was a likelihood that the jury would draw an inference of guilt from it. In sum, there are two hurdles that the majority must overcome for its reasoning to be sustainable: first, it must demonstrate that it is likely that a reasonable juror would infer defendant's guilt from the officer's testimony; and, second, it must demonstrate that the impact of the officer's testimony on the jury was so severe that a reasonable jury would have been unable to disregard it, as the court's curative instruction directed. *Larson*, 325 Or at 22-25.

In analyzing those questions in the context of the record before us, it is helpful to compare the circumstances of this case and a case where the state offers evidence of, or comments on, the constitutional right of a defendant to remain silent. When that comparison is made, it is apparent that the testimony of the officer that defendant "wanted to call his lawyer" before making a decision about whether to take an Intoxilyzer test does not carry with it the same prejudicial effect that the calling of attention to a defendant's exercise of the right to remain silent could have. Initially, the officer testified without objection that he read to defendant his "rights and consequences" before administering the Intoxilyzer test. The officer was then asked by the prosecutor if inquiry was made of defendant about whether he would take the Intoxilyzer test. When the officer replied in the affirmative, he was asked by the prosecutor, "How did [defendant] respond?" Had a motion for a mistrial been made, the trial court could have found, in the exercise of its lawful discretion, that no reasonable juror would have inferred guilt based on defendant's answer, particularly in light of everyday common knowledge about the implied consent provisions in ORS 813.095 to 813.136 and the constitutional right to consult with a lawyer.

The Supreme Court utilized similar reasoning in *State v. Smallwood*, 277 Or 503, 561 P2d 600 (1976), *cert den*, 434 US 849 (1977). In *Smallwood*, the state had the defendant examined by a psychiatrist. The psychiatrist testified at trial that the defendant had asserted his right to have counsel present during the examination. The defendant moved for

a mistrial, which the trial court denied. After the defendant was convicted, he appealed. On appeal, the Supreme Court affirmed the trial court's denial of the motion for a mistrial, observing that

> "it seems entirely natural that [defendant] would be distrustful of the opposition under such circumstances and want to have some protection against unfair advantage being taken of him. The only adverse inference that could possibly be drawn would be that defendant would want the protection of his lawyer only if he was actually sane and was fearful that it would be found out by the psychiatrist that defendant was dissembling. We believe that a contemporary jury is sufficiently aware of the value of legal counsel not to draw this tenuous inference."

*Smallwood*, 277 Or at 508-09.

The inference of guilty knowledge that the majority draws from defendant's invocation of his right to counsel is as tenuous as the inference that the Supreme Court rejected in *Smallwood*. However, according to the majority, because

> "defendant was arrested for DUII at 3:30 in the morning, was asked to take a breath test, and was informed that there would be adverse consequences if he refused[, i]t is much more difficult to see why a sober person in those circumstances would want to call a lawyer before deciding whether to take the test."

223 Or App at 460 n 4. That reasoning demonstrates that the majority misses the court's legal conclusion in *Smallwood* and its application to the circumstances in this case. The holding in *Smallwood* turns on the court's conclusion that— even if an adverse inference could be drawn from the defendant's invocation of his right to counsel that he was feigning insanity and was fearful that he would be found out by the psychiatrist who was prepared to examine him—a contemporary jury would not draw that inference because of its awareness of the value of legal counsel. Similarly, under the circumstances of this case, a trial court in the proper exercise of its discretion could find that a contemporary jury, aware of the value of legal counsel in the circumstances facing defendant, would not draw the inference that defendant wanted a

lawyer because he knew that he had consumed more intoxicants than the law permitted. Rather, the desire to consult with counsel under the above circumstances is the kind of action that a reasonable person might well undertake merely in an effort to understand his or her options before deciding whether to take the Intoxilyzer test.

But, even if the jury could draw the inference from defendant's request to consult with his attorney as an admission of guilt, the trial court told the jury not to draw such an inference. As the court told the jury, every person has the right to call their lawyer in such circumstances, "you're not supposed to make any inference from that, since they have a right to do it" and "[t]he seven of us are going to totally ignore it." Moreover, there is nothing in the record that warrants the majority's conclusion that the jury would have been unable to follow the trial court's instruction in that regard.

A survey of the relevant Supreme Court case law involving similar considerations supports that conclusion. In *State v. Bowen*, 340 Or 487, 135 P3d 272 (2006), *cert den*, 549 US 1214, 127 S Ct 1258 (2007), the trial court gave a curative instruction to the jury to disregard any convictions that were not admissible for impeachment purposes because of staleness. The *Bowen* court, citing *State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990), affirmed the denial of the defendant's motion for a mistrial, reasoning that "jurors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so." 340 Or at 511; *see also State v. Terry*, 333 Or 163, 177, 37 P3d 157 (2001), *cert den*, 536 US 910 (2002) (a curative instruction was sufficient to "neutralize the possibility of prejudice" of evidentiary inference that the defendant failed a polygraph examination).

In *State v. Farrar*, 309 Or 132, 165-66, 786 P2d 161, *cert den*, 492 US 914 (1990), the prosecutor commented on the right of the defendant to remain silent despite opportunities to explain to the police what had occurred. The defendant moved for a mistrial, which the trial court denied. On appeal, the Supreme Court affirmed. In holding that the prosecutor's reference did not constitute prejudicial error, the court observed that the comment appeared to have been

made inadvertently and that, in context, it was not likely to have prejudiced the defendant. *See also Larson*, 325 Or at 24 ("After a full consideration of the record, we conclude that the context of the prosecutor's improper comment was not one in which inferences prejudicial to defendant were likely to have been drawn by the jury. The prosecutor made only a single reference to defendant's ability to testify.").

In contrast to the circumstances in the above cases, the prosecutor in *State v. White*, 303 Or 333, 736 P2d 552 (1987), told the jury at the beginning of the trial that the defendant had been called to testify in an earlier trial but had refused to do so. Observing that the prosecutor's conduct was deliberate and directed specifically at the jury's attention, the court concluded that a mistrial was required. *See also State v. Jones*, 279 Or 55, 63, 566 P2d 867 (1977) (holding that a mistrial was required where the "prosecuting attorney, well knowing that he had no proof that defendant has been previously convicted of rape (as indicated by the record of various other offenses offered by him in evidence), persisted in making comments and insinuations to that effect, including the clearly improper attempt to get before the jury the alleged statement by [the prosecution witness] that he had 'done it so many times before' "). Unlike in *White* and in *Jones*, there is no suggestion in this record that the prosecution intended to inject improper evidence in the record. Indeed, the question "[h]ow did he respond [to the request to take the Intoxilyzer test]" was proper.

Defendant also makes another assignment of error involving a different issue in which he contends that the trial court erred in denying his motion for a mistrial. I would hold that the trial court did not abuse its discretion under the existing circumstances when it denied defendant's motion, and a further discussion of that issue would not benefit the bench or bar.

In summary, there is no finding by the trial court that the prosecution intentionally introduced inadmissible evidence into the record, nor did defendant make that contention to the trial court. Rather, there is only evidence of a truthful response by the officer about defendant desiring to consult with counsel combined with the curative instruction

given by the trial court (to which defendant had no objection). Those circumstances make this case more like the cases in which the denial of a motion for mistrial has been upheld than the cases in which the Supreme Court has reversed. The majority errs by first considering an untimely motion and then by incorrectly construing the governing Supreme Court precedents regarding whether the trial court abused its discretion.

For those reasons, I dissent.