Argued and submitted May 6, 2009, reversed and remanded March 3, 2010

# STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

# DERIK A. BURGHARDT,
*Defendant-Respondent.*

Washington County Circuit Court
D064035T; A135656

227 P3d 783

Jamie K. Contreras, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

John Henry Hingson III argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

This is a state's appeal in a criminal case for misdemeanor driving while under the influence of intoxicants (DUII). ORS 813.010. Before trial, the trial court suppressed several pieces of evidence on the ground that defendant had been deprived of a reasonable opportunity to seek confidential legal advice before deciding whether to submit to a breath test. We reverse and remand.

The relevant facts are, for the purposes of this appeal, undisputed. After pulling defendant over early one morning, at 4:00 a.m., Sherwood Police Officer Johnson observed signs of defendant's intoxication. Defendant consented to perform several field sobriety tests, including a horizontal gaze nystagmus test, all of which he failed. Johnson then arrested defendant for DUII and transported him to the police station. During transport, defendant asked Johnson if he could "call someone or an attorney." Johnson responded that defendant could make a call from the police station.

When they arrived at the police station, Johnson began the standard observation period that precedes the administration of a breath test. Johnson then asked if defendant wanted to make a phone call. Defendant stated that "he wanted to call his dad and ask his dad for a phone number." He elaborated that "his dad was an attorney, but he couldn't be represented by him. He just wanted to call him and ask him for a phone number." Johnson asked defendant if the purpose of the call was to obtain legal advice, because, if it was, Johnson would leave defendant alone in the room so that he could speak to his father privately. Defendant "said no, that he was just asking his father for a phone number for somebody else."

Johnson remained in the room while defendant called his father. During that conversation, defendant started weeping and apologizing for his DUII arrest. Two minutes into the conversation, defendant's father asked to speak to Johnson, and defendant handed the phone to Johnson. Defendant's father asked whether defendant had taken a breath test and asked about the consequences of him refusing to submit to one. Johnson provided that information to him. Johnson gave the phone back to defendant, who told

his father, "It's my fault. I'm just gonna blow." Defendant never obtained a phone number from his father.

After defendant's conversation with his father, defendant told Johnson that he wanted to call "his buddy." Johnson remained in the room for that conversation as well, without first restating to defendant that he would leave the room if the purpose of defendant's call was to get legal advice. During that conversation, defendant merely informed his friend of "where he was at."

Johnson then read defendant the implied consent form, and defendant submitted to a breath test. The test disclosed a blood alcohol content of 0.16 percent. Johnson cited defendant for misdemeanor DUII and released him.

Before trial, defendant filed a motion to suppress. The trial court suppressed the results of the horizontal gaze nystagmus test, a ruling that the state does not challenge on appeal. The court also suppressed the results of the breath test and the statements that defendant made during his conversation with his father. In the court's view, defendant's right to counsel was violated when Johnson remained in the room during defendant's conversation with his father, because defendant's father was an attorney. The fact that defendant was not calling his father to obtain legal advice, the court explained, was not relevant. The court also based its decision on the fact that Johnson did not repeat to defendant the advice of his right to confidential legal advice before defendant called his friend.

On appeal, the state argues that the trial court erred in suppressing defendant's statements and the breath test results. According to the state, Johnson did precisely what the law requires to ensure that defendant was afforded a reasonable opportunity to obtain confidential legal advice— that is, Johnson told defendant that, if he wanted to make a telephone call to obtain legal advice, he would be afforded privacy during the call. The state also contends that the trial court erred in suppressing the breath test results on the ground that the officer did not reinform defendant of his right to confidential legal advice before he placed the call to "his buddy." According to the state, the law does not require an officer to repeat a statement of a defendant's rights every time the defendant picks up a telephone.

Defendant responds that it is of no consequence that defendant stated that he would not be getting legal advice from his father. The moment that defendant made contact with his father, defendant argues, he should have been afforded privacy because *any* communication with *any person* who happens to be attorney must remain confidential. The flaw in the state's reasoning, defendant asserts, is its premise that the right to confidential communication is triggered by a request for "legal advice." According to defendant, the constitutional right is to talk to an attorney, whether or not for the purpose of legal advice. In defendant's view, because Johnson did not leave the room when defendant talked with an individual who was an attorney—regardless of the fact that defendant disclaimed an interest in seeking legal advice—his right to counsel was violated, and suppression of the breath test results and statements was warranted.

■    Article I, section 11, of the Oregon Constitution provides, in part, that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *." The Oregon Supreme Court has held that that provision guarantees an arrested driver "the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988). Confidentiality is implicit in that right. *State v. Durbin*, 335 Or 183, 190, 63 P3d 576 (2003).

■■    Contrary to defendant's view of the law, however, an individual's right to such confidentiality is triggered by a request for legal advice, not merely a request to talk with an individual who happens to be a member of a bar association. As the Supreme Court explained in *Durbin*, "the right to counsel entitles the arrested driver, upon request, to a 'reasonable opportunity to obtain *legal advice* before deciding whether to submit to a breath test.'" *Id.* (quoting *Spencer*, 305 Or at 74) (emphasis added). The requirement of confidentiality is a consequence of the privileged nature of conversations between an attorney and his or her client. Again, as the court explained in *Durbin*, "[w]hen one seeks legal advice, the protections of the lawyer-client privilege are implicated, because appropriate legal advice requires frank communication between the client and the lawyer." *Id.* The existence of the attorney-client privilege and its purpose to encourage

such frank communication are the explicit rationales for the rule of confidentiality that the court recognized in *Durbin. Id.*

■ In this case, nothing that defendant told Johnson triggered the right to a confidential phone call. He did not tell Johnson that he wished to make a call for the purpose of obtaining legal advice. Johnson, in fact, had expressly questioned defendant about just that matter, explaining to him that, if defendant wished to make a call to obtain legal advice, Johnson would leave the room and give him the privacy that the law requires. In response, however, defendant told Johnson that he was *not* making the call for the purpose of obtaining legal advice.

Defendant argues that the law does not permit an officer to listen to an arrestee's phone call to determine whether it is the sort that triggers the right to confidential communication. Directly to the contrary, however, is our decision in *State v. Veatch*, 223 Or App 444, 196 P3d 45 (2008).

In *Veatch*, the defendant asked the arresting officer for an opportunity to call his attorney. *Id.* at 447. The officer allowed him to do so, but remained in the room to make sure that the defendant actually made contact with an attorney. As it turned out, the defendant could not reach his attorney and left a message requesting a return call. Then the defendant asked to call his mother to obtain a referral to another attorney. The officer remained in the room while the defendant made that call, as well. A half-hour later, having heard nothing from his attorney, the defendant decided to take the breath test, but he did not blow hard enough for the machine to register the sample. As a result, the officer recorded the attempt as a refusal.

The defendant argued that the evidence related to the breath test should have been suppressed because he was not afforded a reasonable opportunity to consult with counsel, given that the officer never left the room. *Id.* at 450. We rejected the argument, explaining that the officer was justified in remaining in the room until he was satisfied that the defendant actually had contacted his attorney. *Id.* at 450-52; *accord State v. Matviyenko*, 212 Or App 125, 130, 157 P3d 268

(2007) ("[W]e acknowledge that an officer may be justified in remaining in the room until contact with an attorney is made in order to ensure that the suspect actually calls an attorney rather than using the telephone for some inappropriate purpose.").

Defendant insists that, because his father was an attorney, he *could have* asked for legal advice, but for the "chilling effect" of Johnson remaining in the room. The fact remains, however, that defendant explicitly disclaimed to Johnson any intention to do so, and there is a complete absence of evidence in the record that, at any point, he had changed his mind, much less that Johnson's presence in the room "chilled" his interest in doing so. We conclude that the trial court erred in determining that the mere fact that defendant's father happened to be an attorney was enough to trigger the obligation to provide defendant a confidential phone call to him.

■      Defendant argues—as the trial court also concluded—that, in any event, the evidence was properly suppressed because Johnson failed to repeat his advice of defendant's legal rights when defendant said that he wanted to call "his buddy." Defendant cites no source of law imposing a requirement that an officer repeatedly advise a defendant of his or her legal right to a confidential communication with counsel before each and every phone call, and we are aware of none.

Reversed and remanded.