Argued April 7, affirmed May 11, petition for rehearing
denied June 1, 1960

# STATE OF OREGON *v.* SHAFER

351 P. 2d 941

*Glenn D. Ramirez,* Klamath Falls, argued the cause for appellant. With him on the briefs was Robert M. Redding, Klamath Falls.

*O. W. Goakey,* Deputy District Attorney, Klamath Falls, argued the cause for respondent. With him on the brief were Arthur A. Beddoe, District Attorney, and Ernest F. Gordon, Deputy District Attorney, Klamath Falls.

Before McAllister, Chief Justice, and O'Connell, Goodwin and Harris, Justices.

GOODWIN, J.

The defendant, Shafer, appeals from a conviction of larceny after a jury trial in Klamath County.

Shafer was jointly indicted with one Wilson, whose case is also decided today. See *State v. Wilson,* 221 Or 602, 351 P2d 944. The defendants had separate trials. The indictment accused the defendants jointly of stealing a black cow branded with a VK-connected on the right shoulder. Shafer assigns error to numerous rulings by the trial court, but the principal issue on appeal is whether he was denied a fair trial. The trial took six days and produced more than 800 typewritten pages

of testimony. The trial was not free from incident; the question is whether it was free from prejudice.

■ One of the assignments of error attacks the sufficiency of the evidence. It is therefore necessary for us to examine the record in detail. Viewing the evidence in the light most favorable to the defendant, we believe the question of his guilt was properly submitted to the jury. The evidence will be summarized briefly.

Shafer had been working for his brother-in-law Wilson without pay during the spring of 1958 on the latter's ranch near Fort Klamath. About the first of June, Shafer and Wilson took two truckloads of cattle to a ranch occupied by Shafer's sister, a Mrs. Burns, near the Columbia River some 350 miles from Fort Klamath. These cattle, numbering 13, were the only cattle transported to the Burns ranch by the defendants. The jury could have found that Shafer and Wilson told Mrs. Burns that the cattle belonged to Shafer and Wilson. The statement is denied.

The cattle from Klamath County grazed undisturbed through the summer of 1958 on the Burns ranch, and in September were examined by a state brand inspector. The cow described in the indictment was identified by numerous witnesses. She was found among the 13, wearing a scar described by witnesses as a blotched brand in addition to the VK-connected brand described in the indictment. A brand inspector swore that on September 10 he saw a black calf wearing an RW brand sucking the VK cow. The RW brand is registered in the name of Wilson. The cow, along with others thought by the state to be of doubtful title, was taken to Klamath County and there was identified by one VanderKamp as his cow which he had reported as "lost, strayed or stolen" in May, 1958.

Shafer testified in his own defense that he had

helped Wilson transport 13 head of cattle from Fort Klamath to the ranch where the cow described in the indictment was found. He denied that the VK cow was among them. During his extensive direct and redirect examination he offered no explanation for the cow's presence on his sister's ranch. She had testified that only 13 cows were delivered on her ranch during the time in question and that the defendants were the only persons who delivered cattle. She also testified that the cow in question had not previously been on her ranch. If the jury believed the state's witnesses and also the defense testimony that the cow was not among those transported from Klamath County to the Columbia River, then the only inferences possible would be either that the cow strayed 350 miles and insinuated herself into the herd on the Burns ranch, or that some third person accomplished this feat. The feat would be remarkable because it would also have required another cow to vanish entirely in order to keep the number in balance. The jury chose to believe that Shafer participated in the transportation of the cow. There was sufficient evidence to go to the jury.

The question remains whether Shafer had a fair trial. His numerous assignments of error will be dealt with in order.

■ First, Shafer claims it was error for the trial court to refuse to allow his motion to require the state to elect the exact date upon which it would rely for the taking. He said he would rely upon an alibi while arguing his motion, but later admitted taking some cattle to the Burns ranch within the time required by the indictment. The state is not required to elect. *State v. Jackson,* 221 Or 315, 351 P2d 439; *State v. Howard,* 214 Or 611, 331 P2d 1116. The owner missed his cow some time around the middle of April, accord-

ing to the evidence, and the state had evidence that the cow was found on the Burns ranch about the first of June. The indictment alleged the taking on or about May 1, 1958. It would be novel if the state should be required to lay the exact time of the taking in every indictment for stealing cattle from the open range. Counsel has cited no such cases and we have found none.

■ The second assignment of error attacks the sufficiency of the evidence to show a felonious taking. There was evidence the cow was stolen. There was evidence that Shafer and Wilson took the cow from Klamath County to a ranch 350 miles away. Evidence that a calf wearing Wilson's brand was found sucking the cow tends to prove conduct inconsistent with an accidental harboring of a stray. There was a conspicuous failure to explain any of these facts. The evidence was sufficient to go to the jury. *State v. Eppers,* 138 Or 340, 3 P2d 989, 6 P2d 1086.

■ The third assignment of error raises a more troublesome question. Shafer moved for a mistrial on the ground, among others, that one of the state's witnesses, identified as a prominent local cattleman, who testified during the course of the trial, was permitted to sit inside the bar of the court, that he indicated throughout the trial by gestures and expressions (which are not described in the record) hostility toward the defendant and his theory of the case. When the defense attorney asked the witness on cross-examination about his presence inside the bar during the trial, the trial judge said, "I am the one that had him sit on the inside of the rail." This action of the trial judge and his comment about it is complained of as giving to a state's witness, in the presence of the jury, a judicial blessing which deprived the defendant of an impartial trial. See *Frangos v. Edmunds,* 179 Or

577, 609, 173 P2d 596. The assignment of error gains force from the fact that the trial was highly publicized and well attended by local cattlemen, and that the testimony of the witness complained of was openly hostile to the defense, although the witness denied knowing Shafer personally. The argument to the jury is unreported, so we have no way of knowing what other, if any, mischief might have resulted from the atmosphere in which the trial was conducted.

■ The assignment of error is far from satisfactory as the record is presented to this court, and we would be justified in taking no notice of the episode. See *State v. Avent,* 209 Or 181, 302 P2d 549. Shafer moved for a mistrial at the commencement of a later session of the trial, after the episode now complained of had been passed. The motion combined a number of alleged grounds for mistrial, none of which appear to have been properly excepted to when they happened. The time to move for a mistrial is when the allegedly prejudicial act occurs, not after the incident has been allowed to pass by, for then it is too late for the trial judge to caution the jury and mend the harm.

Rule 19 of the *Standards of Courtroom Ethics* adopted by the Circuit Judges of Oregon, December 11, 1954, reads as follows:

"Judges presiding at jury trials should refrain from extending undue recognition or greetings to any witness in the presence of the jury."

This is a good rule. We believe the able and experienced trial judge intended no undue recognition of any witness, and that he was motivated merely by a desire to accommodate a witness who would have had difficulty finding a seat in a crowded courtroom. The jury may not have seen it that way, but if counsel

thought there was prejudice, he should have protected his record. Instead, he waited for the verdict, and now seeks a new trial.

We believe the trial court could have allowed the defendant's motion for a new trial. The refusal to do so, however, was not such an abuse of discretion as to require reversal. In view of the inadequacy of the bill of exceptions and the failure to make a proper record, taken with the substantial evidence of guilt and the careful and conscientious instructions given at the end of the case, we are unable to say that Shafer was deprived of a fair trial.

The remaining assignments of error raise no questions not dealt with above.

The judgment is affirmed.