Submitted April 26, 2013, reversed and remanded August 20, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN ELWOOD CAUSEY, JR.,
*Defendant-Appellant.*

Multnomah County Circuit Court
100646533; A148112

333 P3d 345

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

### DE MUNIZ, S. J.

Defendant appeals a judgment of conviction for attempting to promote prostitution, ORS 167.012(1)(d).[1] On appeal, defendant assigns error to the admission into evidence of conversations recorded by an undercover police officer, printouts from a website that contained photos and phone numbers, and text messages from two women that were recovered from defendant's cell phone. According to defendant, the admission of that evidence violated OEC 801 and defendant's right to confrontation under Article I, section 11, of the Oregon Constitution. We conclude that the trial court's admission of the text messages sent from one of the women to defendant was error requiring that we reverse defendant's convictions and remand for a new trial.[2]

Because defendant was found guilty by a jury, we state the facts in the light most favorable to the state. *State v. McDonnell*, 313 Or 478, 480, 837 P2d 941 (1992). On May 4, 2010, Officer Miller was working undercover as a decoy on a prostitution sting in Portland. While Miller was at a bus stop, Foster and her passenger, defendant, drove up to Miller and asked her if she needed a ride. Miller recorded the conversation that ensued between Miller, Foster, and defendant. Based on her training and experience, Miller concluded that defendant was trying to recruit her to work as a prostitute. Miller contacted officers Hertzler and Kula, who were also in the area, and they subsequently arrested defendant on the charge of promoting prostitution. During the arrest, Hertzler seized a cell phone from defendant's pocket. Kula also seized two cell phones from the vehicle that Foster was driving, one of which he later determined belonged to Foster. After obtaining a search warrant, Kula

---

[1] The charging instrument incorrectly identifies the statutory basis for the crime as ORS 167.012(3). However, there is no subsection (3) to ORS 167.012. ORS 167.012(1)(d) states that "[a] person commits the crime of promoting prostitution if, with intent to promote prostitution, the person knowingly * * * [e]ngages in any conduct that institutes, aids or facilitates an act or enterprise of prostitution." The information charged in Count 2 that defendant "did unlawfully and intentionally, with intent to promote prostitution, engage in conduct, thereby instituting, aiding, and facilitating an attempted act of prostitution and attempted enterprise of prostitution."

[2] Because we conclude that those text messages should not have been admitted into evidence, we do not decide the admissibility of the other evidence.

searched all three phones. He discovered a series of text messages between defendant and Foster, as well as text messages between defendant and a second woman and pictures of women in suggestive poses. The pictures led Kula to an escort service website which contained pictures of Foster in suggestive poses.

At trial, the state introduced the following text-message exchanges between defendant and Foster:

*March 10, 2010*

Foster:   "I'm at Chestnut Tree Hotel, Room 16. Call when done[.]"

Defendant:   "Gotcha, Mama."

Foster:   "This guy's late. How long should I wait for this guy before I give up?"

Defendant:   "Chill at the bar for about 15 minutes. Then give him a call. Have a drink or two."

Foster:   "We never exchanged numbers. We've only been talking through email here and there. I just ordered a shot. If he's not here by 1:30, I'll call you. If you're at your mom's maybe try checking my email and seeing if he sent me anything."

Foster:   "He just got here. I'll call you."

Defendant:   "Run him for that."

Foster (approximately 30 minutes later):   "I'm ready to go in five minutes."

*April 28, 2010*

Foster (after informing defendant that she is in room 110):   "Just finished. He's getting dressed. The hotel bitch is being nosey. How long before you're here?"

Defendant:   "About 15 minutes."

*May 2-3, 2010*

Foster (after informing defendant that she is in room 235):   "He's here."

Foster (early the next morning):   "I can go if you're ready to [come] get me. I'm about to get dressed now."

Kula testified that he believed that the content of the text messages clearly showed a pimp/prostitute relationship.

As noted, defendant assigns error to the admission of the text messages, arguing that the messages were inadmissible hearsay under OEC 801 and, in any event, that the admission of the text messages violated defendant's confrontation rights under Article I, section 11, of the Oregon Constitution.[3] The state responds that the text messages are not hearsay because they were not offered for the truth of the matter asserted. Rather, the state argues that the messages were offered to prove that defendant had knowledge of Foster's prostitution activities and was personally involved with those activities.

Under the usual paradigm, we first consider defendant's statutory claim and reach his constitutional claims only if it is necessary to do so. *See State v. Camarena*, 344 Or 28, 35-36, 176 P3d 380 (2008) (describing paradigm).

OEC 801(3) states, "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The reason for the statutory exclusion is that hearsay statements are generally considered to be untrustworthy. *State v. Cazares-Mendez/Reyes-Sanchez*, 350 Or 491, 505, 256 P3d 104 (2011). As noted above, the state's argument is that the text messages from Foster were admissible because they were not offered by the state for the truth of the matter asserted but instead offered only to prove that defendant had knowledge of Foster's prostitution activities.

We reject the state's argument for the following reasons. Although the text messages may have indicated that defendant had knowledge of Foster's activities, in order for him to have that knowledge, the content of those text messages had to be true. Although the state did not need to prove that Foster was at a particular time and place charging a man $500 for her services, the state did need to prove that Foster was meeting a man for sex in exchange for money. The text messages are relevant because they are circumstantial evidence of an "act or enterprise of prostitution" required under ORS 167.012(1)(d). For the text messages to

---

[3] On appeal, defendant does not challenge the admission of the text messages that he sent.

be relevant as circumstantial evidence, however, the jury was required to accept the truthfulness of the content of those messages. The relevance was not that the statements were made, but the content of the statements.

In addition, the text messages were then used by the state as the basis for Kula's expert opinion testimony that the messages were "highly consistent and indicative of a pimp/prostitute relationship." In order for Kula to testify to that opinion, Kula had to accept the truthfulness of the content of the text messages. In fact, the judge commented that the state "had to prove an enterprise, don't they?" More importantly, in order for the jury to accept Kula's opinion and make a similar inference, the jury had to accept the truthfulness of the content of the text messages.

Because the text messages were out-of-court statements and their relevance depended on the truth of the content of the messages, the messages were hearsay and not admissible.[4] The trial court erred in admitting the text messages, and that error requires that we reverse and remand for a new trial.[5]

Reversed and remanded.

---

[4] The state does not argue that the text messages were admissible under any exception to the rule against hearsay.

[5] The state does not argue that the admission of the text messages was harmless error.