No. 16        May 16, 2024        301

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

CARLOS ALBERTO QUEBRADO,
*Petitioner on Review.*

(CC 19CR34736) (CA A174385) (SC S070057)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 19, 2023.

Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Doug M. Petrina, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

JAMES, J.

The decision of the Court of Appeals is reversed in part and affirmed in part. The case is remanded to the Court of Appeals for further consideration.

Flynn, C.J. concurred and filed an opinion.

_____

* Appeal from Washington County Circuit Court, Ricardo J. Menchaca, Judge. 323 Or App 308 (2022) (nonprecedential memorandum opinion).

**JAMES, J.**

This is a case about preservation. The state charged defendant as an accomplice to second-degree assault and unlawful use of a weapon. The charges arose from defendant's codefendant firing a shotgun from the passenger window of the car that defendant was driving, into another car's window, hitting that car's passenger. Prior to trial, the codefendant entered a plea deal with the state in return for her testimony against defendant. Everything about the state's conduct of the case, from the pretrial hearings to its witness list and *voir dire* discussions, indicated that it intended to call her as a witness. However, when the state rested its case on a Thursday afternoon, it had not called her. The state had, however, already introduced several of her statements through other witnesses during its case-in-chief. When the state rested, the trial court immediately concluded the day's proceedings with instructions to counsel that court would resume the following Tuesday.

In the interim, defense counsel filed a written motion for a mistrial, or, alternatively, a motion to strike testimony, arguing that the state's failure to call the codefendant as a witness meant that its reliance on her hearsay statements violated defendant's confrontation rights under Article I, section 11, of the Oregon Constitution. The court took up that mistrial motion immediately upon resuming the proceedings on Tuesday. The state did not argue at that time that defendant's motion was untimely, and the trial court engaged with the merits of defendant's motion, ruling that no confrontation violation had occurred. Defendant thereafter was convicted. On appeal, the Court of Appeals affirmed, in a nonprecedential opinion, briefly reasoning that defendant's motion had been untimely and therefore not preserved as error on appeal. *State v. Quebrado*, 323 Or App 308, 310 (2022) (nonprecedential memorandum opinion). Defendant petitioned for review, which we allowed.

The issue before us on review therefore concerns preservation. And while this case involves only one motion—a mistrial motion—the preservation analysis of mistrial motions requires we address two distinct, but interrelated questions of timeliness—the timeliness of the

objection to the act that allegedly created the basis for the mistrial, and the timeliness of the mistrial motion itself. First, we consider when a defendant must object to timely raise a confrontation challenge under Article I, section 11, of the Oregon Constitution—either at the point when statements that a potential witness had made are admitted, or, instead, when the state fails to call the potential witness to testify. Second, we consider whether defendant's motion for a mistrial, which was not orally raised immediately upon the state resting, but instead was filed in written form several days later, yet before the next scheduled day of trial, was untimely, and therefore unpreserved.

As we explain, confrontation under Article I, section 11, is more than solely a question of evidence. A potential Article I, section 11, confrontation violation occurs, not simply when hearsay evidence is admitted at trial, but when hearsay evidence is admitted *and* the hearsay declarant does not testify at trial and the state fails to show that it was unable to produce the declarant after exhausting all reasonable means of doing so. Because not one, but two events need to occur for an Article I, section 11, confrontation violation, and because those two events may occur at different points in a trial, the appropriate time to challenge the admission of hearsay evidence on confrontation grounds may likewise vary. Thus, in determining whether a defendant has preserved a confrontation objection under Article I, section 11, courts must recognize that preservation "is a doctrine rooted in practicality, not technicality." *State v. Skotland*, ___ Or ___, ___, ___ P3d ___ (May 16, 2024) (slip op at 7:14-15).

Here, in the circumstances of defendant's trial, it was understandable for defendant to forego objecting to the hearsay testimony when it was offered, because, in light of how the case had been tried, it was reasonable to expect that the declarant would testify herself later. The practical purposes of preservation were served by an objection occurring at the close of the state's case-in-chief. Here, defendant did not make that objection immediately when the state rested, which could well have presented a problem for him. However, because no significant event occurred in the trial between the time the state rested and the trial resumed on

the following Tuesday, and, even more importantly, because neither the state nor the trial court expressed any concerns about timeliness or prejudice, we conclude that defendant's mistrial motion based on confrontation grounds was timely, and properly preserved the issue. Accordingly, the decision of the Court of Appeals is reversed in part and affirmed in part, and this case is remanded to the Court of Appeals for further consideration.[1]

## BACKGROUND

The relevant facts are undisputed. Defendant and his girlfriend, Sisco, were at a bar and began arguing with another couple, the Dixons. The argument escalated, and bar staff directed all of them to leave the bar, with their altercation continuing outside in the parking lot. Eventually, defendant and Sisco drove away; the Dixons left shortly thereafter. Defendant and Sisco then followed the Dixons, with Sisco shouting at the Dixons and firing a shotgun at them from the passenger window while defendant drove. Shotgun pellets hit Ms. Dixon in the forehead and the hand.

A police officer who happened to be in the area saw defendant's car and also saw Sisco in the passenger seat holding a shotgun. The officer began to pursue defendant's car, and a short chase ensued. Defendant and Sisco eventually abandoned their car and fled on foot; they were later apprehended. Police searched defendant's car and found a 12-gauge shotgun and a spent shell in the passenger-door pocket. A citizen found an unfired shell some distance away. The shells contained size-eight shot, the same type of pellets that struck the Dixons' car. The state charged defendant and Sisco with attempted murder, second-degree assault, unlawful use of a weapon, and attempting to elude a police officer.

---

[1] We allowed review on a second question presented in defendant's petition for review—whether, when a jury "asks a question during deliberations that indicates that the jury may be proceeding under a legal theory that is not cognizable under Oregon law, does a defendant's request that the trial court inform the jury that the legal theory is not correct constitute a 'negative instruction' that the court is not required to give?" Because we conclude that this case must be remanded to the Court of Appeals for further consideration of the merits of defendant's confrontation objection, we exercise our discretion under ORAP 9.20(2) to decline to reach the jury question issue identified in defendant's second question at this time. Our decision here does not foreclose continued litigation on that matter, should it continue to be at issue following our remand.

Sisco entered a plea deal contingent on her agreeing to testify against defendant, and the trial court later granted a pretrial continuance so that defendant could conduct discovery in preparation to impeach her. At a later pretrial hearing, the parties discussed limits on Sisco's anticipated trial testimony, and, at another hearing, the state represented that it expected her to testify. At trial, the state included Sisco on its witness list, subpoenaed her as a trial witness, and read her name to the jury pool as a potential witness.

During the state's direct examination of Mr. Dixon, the state elicited a statement that Sisco allegedly had made to Mr. Dixon at the bar, to the effect of "I'm going to kill you." Defense counsel did not object at that time.[2] The state also elicited testimony from Mr. Dixon that Sisco allegedly had said to defendant in the parking lot, when he had been looking for something in his car, "Not right here; not right here." Defendant objected to that statement as hearsay, and the trial court permitted its admission as a coconspirator statement made in furtherance of the conspiracy under OEC 801(4)(b)(E). Defense counsel made no further objection at that time. Ms. Dixon, similarly, testified that she had observed defendant getting into the back of his car during the altercation and that Sisco had said "No, not here." Defendant did not object to that testimony. Finally, a detective testified that both Mr. and Ms. Dixon had told him that Sisco had said, "Not here. Not here." Defendant did not object to that testimony.

The state then rested its case on a Thursday afternoon without having called Sisco as a witness. The trial court adjourned for the day, with instructions to the parties that the case would resume on Tuesday morning. At that point, it was clear that the state would not be calling Sisco as a witness. After court adjourned, defendant filed a written motion for mistrial or, alternatively, to strike the testimony of the Dixons and the detective relating to

_____

[2] Defense counsel later stated that he did not object at the time on hearsay grounds because he believed a hearsay exception applied. Because we address only the issue of preservation and not merits of defendant's confrontation-based arguments in this case, we express no view as to whether that statement or any of the other challenged statements constituted hearsay so as to raise confrontation concerns.

Sisco's statements and give a curative instruction, on confrontation grounds under Article I, section 11, of the Oregon Constitution. When trial resumed on Tuesday, the court took up the filed mistrial motion. At that time, defense counsel additionally orally moved for a mistrial or else to strike that testimony, on the same confrontation grounds. Defendant conceded that all the disputed testimony fell within firmly rooted hearsay exceptions—his sole argument was that the state had failed to prove Sisco's unavailability as required by Article I, section 11, which grants persons accused of a crime the right "to meet the witnesses [against them] face to face." *See, e.g.*, *State v. Copeland*, 353 Or 816, 818, 306 P3d 610 (2013) (referring to a defendant's confrontation right under Article I, section 11).

        In response, the state did not argue that defendant's motion was untimely or that Sisco was unavailable. In addressing the merits, however, rather than responding to defendant's argument under Article I, section 11, of the Oregon Constitution, the state advanced an argument under the Sixth Amendment to the United States Constitution, that the testimony had described nontestimonial statements of a coconspirator and, therefore, no Sixth Amendment confrontation violation had occurred. The trial court agreed with the state—including that no confrontation violation had occurred—and denied defendant's motion on the merits:

> "I'm respectfully going to deny the Motion for a Mistrial and respectfully decline to give a curative instruction. I don't find it's hearsay and I don't find it's testimonial, the two statements at issue."[3]

---

[3] The state also had maintained that the statements at issue were not testimonial and, therefore, the Confrontation Clause did not apply. *See Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004) (holding that the federal Confrontation Clause applies only to hearsay statements that are "testimonial" in nature). However, only the federal confrontation clause makes a distinction between testimonial and nontestimonial statements. *See State v. Cook*, 340 Or 530, 540, 135 P3d 260 (2006) (explaining that, even though the United State Supreme Court no longer adheres to the test abrogated by *Crawford*, Oregon's constitutional confrontation rights are governed by the earlier rule, announced in *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), which required both witness unavailability and a firmly rooted hearsay exception). The trial court, in turn, referred only to the fact that the statements were not "testimonial," without addressing defendant arguments under the Oregon Constitution's confrontation provision.

The trial court added, "I do find you've preserved your record."

In rebuttal closing argument, the state relied on Sisco's statements as evidence of defendant's guilt. Defendant was convicted of second-degree assault and unlawful use of a weapon as an accomplice, and he was convicted as a principal for attempting to elude a police officer.

On appeal, among other assignments, defendant assigned error to the trial court's ruling on his Article I, section 11, confrontation objection, arguing that the court's denial of his motion for mistrial or to strike had "flowed from a mistaken legal premise" that no confrontation violation had occurred. The Court of Appeals rejected that argument on preservation grounds, briefly stating:

> "Defendant's fourth and fifth assignments of error assert that the trial court erred when it denied his motion for mistrial and motion to strike. Considering the totality of the circumstances, we conclude that defendant's motions were untimely. *See State v. Sprow*, 298 Or App 44, 49, 445 P3d 351 (2019). Accordingly, we reject defendant's arguments because they were not preserved."

*Quebrado*, 323 Or App at 310.

## ANALYSIS

The issue in this case is preservation, and the motion in question is a mistrial motion. We have stated that, to be preserved for appeal, a motion for mistrial must be timely. *See State v. Walton*, 311 Or 223, 248, 809 P2d 81 (1991) ("To preserve error, a motion for a mistrial must be timely."). We have further noted that, typically, a motion for mistrial is timely if it is made when the allegedly objectionable and mistrial worthy statements or acts are made. *Id.*; *see also State v. Shafer*, 222 Or 230, 235, 351 P2d 941 (1960) ("The time to move for a mistrial is when the allegedly prejudicial act occurs, not after the incident has been allowed to pass by, for then it is too late for the trial judge to caution the jury and mend the harm.").[4]

---

[4] The concurrence raises thoughtful questions about the extent to which our prior decisions may have overvalued timeliness, when considered against the general goals of preservation. In this case, no party has advanced that argument or asked us to revisit any prior decisions. We therefore leave that discussion for another day.

Accordingly, before we can consider the timeliness of defendant's mistrial motion, based on his Article I, section 11, confrontation rights, we must consider when a basis for a confrontation objection under Article I, section 11, arises. The state equates confrontation objections to evidentiary objections, and it advocates for a contemporaneous-objection rule. That is, the state argues that a confrontation objection can be timely raised only if made contemporaneously with the state's introduction of the purported hearsay statement. Here, according to the state, defendant was required to object on confrontation grounds when the state elicited the statements of Sisco through witnesses on direct examination.

There is some support for the state's position. For purposes of the Sixth Amendment, the United States Supreme Court has implied that confrontation objections may be the equivalent to evidentiary objections, stating that "[t]he right to confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may adopt procedural rules governing the exercise of such objections." *Melendez-Diaz v. Massachusetts*, 557 US 305, 313 n 3, 129 S Ct 2527, 174 L Ed 2d 314 (2009).

If a confrontation objection is the direct equivalent of an evidentiary objection, there is support for the state's position that a contemporaneous objection is required because, to challenge an *evidentiary* ruling on appeal, a litigant typically must object at the time when the challenged testimony is proffered. *See State v. Clegg*, 332 Or 432, 442, 31 P3d 408 (2001) ("Generally, once evidence has been admitted without restriction, it can be used by the jury for any purpose.").

However, we decline to create a strict contemporaneous-objection requirement here, because we disagree with the state's characterization of a confrontation challenge as the direct equivalent to an evidentiary challenge. For purposes of Article I, section 11, a confrontation violation does not occur solely with the introduction of hearsay statements. As we explained in *State v. Moore*, 334 Or 328, 333-34, 49 P3d 785 (2002),

"when a hearsay declarant is not present for cross-examination at trial, [Article I, section 11,] normally requires a showing that he is unavailable. Even then, his

> statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."

(Some internal quotation marks omitted.) Accordingly, for purposes of Article I, section 11, confrontation is not solely a question of evidence. Rather, Article I, section 11, looks to the co-occurrence of two events at trial: (1) the state's introduction of hearsay statements, and (2) the state's failure to call the declarant without a showing that the declarant is unavailable.

Because a confrontation challenge is not the direct equivalent to a challenge to the admission of evidence but considers two components—one apparent when the evidence is admitted (the introduction of hearsay), and one that may or may not be apparent when the evidence is admitted (the failure to produce a witness and the witness's unavailability)—and because those two components may not occur at the same time at trial, a strict contemporaneous-objection preservation rule is not workable. The complexity of the inquiry does not lend itself to a one-size-fits-all approach. Instead, parties and courts must consider the practical purposes of preservation—most fundamentally, to ensure procedural fairness. *Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008). At its core, preservation asks whether the parties, and the trial court, had a fair opportunity to meet the merits of the argument later advanced on appeal and thereby avoid the error at the outset or to correct the error upon its occurrence.

In some instances—particularly when the hearsay statement was made by a declarant whom the parties and the court are *not* expecting to testify at trial—preserving a confrontation objection may require a contemporaneous objection as the hearsay statement is admitted. A contemporaneous objection in that circumstance may place both the parties, and the trial court, in the best position to avoid or remedy the error. Any other requirement could allow for gamesmanship by the defense.

In contrast, however, when a trial is conducted in a manner such that it is reasonable to anticipate that the declarant of a hearsay statement will be called as a witness, preserving a confrontation objection may not always require a contemporaneous objection at the time of the hearsay statement's admission. Preservation, as a doctrine of practicalities, does not require purely performative acts by counsel. A requirement that a confrontation objection be made contemporaneously to the introduction of a hearsay statement, even when it is reasonable to expect that the declarant will later be testifying, risks elevating form over substance, which is antithetical to the goals of preservation. *Shields v. Campbell*, 277 Or 71, 77-78, 559 P2d 1275 (1977) (explaining that preservation does not "promote form over substance but [promotes] an efficient administration of justice and the saving of judicial time"). In such a situation, based on the context of how events unfolded at trial, an objection at the close of the state's case, when the declarant has unexpectedly *not* testified, may sufficiently preserve an Article I, section 11, confrontation objection. Any other requirement could allow for gamesmanship by the state.

In this case, every indication in the record shows that the state intended to call Sisco as a witness. The state had secured a plea agreement for her testimony. The trial court had previously continued the trial date so that defendant could conduct discovery in preparation to impeach Sisco after she had agreed to testify against defendant. The parties had discussed at a pretrial hearing limiting the scope of Sisco's trial testimony. The state had included Sisco in its witness list, subpoenaed her as a trial witness, and read her name to the jury pool. In short, on this record there was no reasonable basis to believe that the state would not call Sisco as a witness. Considering all those circumstances, we conclude that the practical purposes of preservation were served by defendant's objection at the close of the state's case, rather than at the time when Sisco's hearsay statements were admitted.

As noted earlier, although this case involves one mistrial motion, analytically the issue involves two constituent parts: (1) the timeliness of the objection to act that

allegedly created the basis for the mistrial, and (2) the timeliness of the mistrial motion itself. Having discussed the first of those, we now address the second. As noted, the state rested its case without calling Sisco as a witness in the afternoon, on a Thursday. Apparently, the court had previously set a trial schedule with the parties that the trial proceedings would end for the week on Thursday, then resume the following Tuesday. Upon the close of the state's case, the trial court said:

> "[PROSECUTOR]:   At this time, Judge, the State rests.

> "[THE COURT]:  All right. Okay it is roughly 3:40 [p.m.]. The State has rested, ladies and gentleman. * * * Thank you all very much for being here this week. [Followed by instructions to return to the courthouse the following Tuesday at 9:00 a.m., together with other instructions, and excusal of the jury.]

> "(Outside the presence of the jury at 3:41 p.m.:)

> "[THE COURT]:   Okay. The jury is outside the courtroom. The State has rested. My thoughts are to take up any additional things on Tuesday * * *. It's been a long day."

At that point, the prosecutor responded, "That's fine with me, Judge." The trial court then adjourned.

During the intervening break in the trial proceedings, defendant filed a written mistrial motion, or in the alternative a motion to strike, based on the state's alleged confrontation violation. On Tuesday, the trial court called to order and immediately took up defendant's motion.

In this court, the state contends that the delay between the Thursday afternoon when the state rested its case, and the Tuesday morning when the court considered defendant's mistrial motion, renders the issue unpreserved. The state more particularly argues that defendant was required to move for a mistrial on Thursday, and any delay was fatal to preservation. In the context of this case, we disagree.

Broadly speaking, mistrial motions are favored at the time when the objectionable act occurs. *See State v. Montez*, 309 Or 564, 601, 789 P2d 1352 (1990) (to preserve

error, a motion for a mistrial must be raised in the trial court); *Shafer*, 222 Or at 235 (generally, a mistrial motion is timely if it is made when the allegedly objectionable error was made). However, we have cautioned that, when a motion for mistrial is not made immediately following the objectionable act, such a motion may nevertheless be timely and preserved if "no significant lapse of time, no additional testimony, no recess, and no discussion of another issue" took place. *State v. Larson*, 325 Or 15, 22, 933 P2d 958 (1997) (mistrial motion was timely when a discussion that took up only two pages of transcript had occurred before the defendant moved for mistrial, following improper statement by prosecutor).

The flexibility in our approach to the timing of mistrial motions once again emphasizes the practical aspect of preservation. As we have explained, "[w]hat is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court." *Peeples*, 345 Or at 220.

One pragmatic touchstone of preservation in the context of a motion for mistrial is whether the parties and the trial court would have been in a superior position to cure the deficiency if the motion had been raised earlier in the proceedings. Our decision in *Shafer* provides such an example. In that case, the defense attorney had asked a prosecution witness who had sat inside the courtroom bar about his presence there, and the trial judge then stated, "'I am the one that had him sit on the inside of the rail.'" 222 Or at 234. The defendant moved for a mistrial on a subsequent day of trial, arguing that the prosecution witness had received a "judicial blessing," which had prejudiced the jury against the defendant. *Id*. We concluded, however, that any appearance of undue recognition arising from allowing the witness to sit inside the bar could have been cured with a timely objection and, therefore, the issue had not been preserved. *Id*. at 235.

Two considerations lead us to conclude that the practical purposes of preservation were served here, even

though defendant did not raise the issue immediately upon the state resting on Thursday. First, between when the trial court dismissed the parties on Thursday, and when it took up the mistrial motion on Tuesday morning, no trial actions had occurred. No other issue was discussed. And no other evidence was presented in the time between those two events. In other cases, we have cited the lack of further trial developments as an important factor in evaluating whether a mistrial motion was timely. *Larson*, 325 Or at 22.

Even with the absence of such trial developments, of course, it is possible that the state could have identified some prejudice from defendant's delay, such as by objecting that Sisco was no longer available. Thus, the second consideration significant to our analysis is that the state did not do so. Before us, the state maintains that, by the time that defendant moved for a mistrial, it was too late to call Sisco as a witness and mend the harm. The state, however, did not make that argument in the trial court or present any evidence to support it. To the extent the state is now advocating we affirm the trial court on timeliness, under a "right for the wrong reasons" rationale, that argument is foreclosed because the record might have developed differently. *See generally Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (considering whether record would have developed differently had the issue been raised in the trial court). For example, the state could have explained, during the Tuesday hearing on that motion, why Sisco had been unavailable to testify or how it had been prejudiced by defendant not moving for a mistrial on Thursday. It could have moved to reopen its case. It did not.

As we stated in a different preservation case issued today, "the winds of preservation can be gauged by looking to the weathervane of trial court surprise: Would the trial court be taken aback to find itself reversed *on this issue, for this reason*?" *Skotland*, __ Or at __ (emphasis in original) (slip op at 11:1-3). That inquiry is applicable here, as well, though in this context the trial court was affirmed on appeal. Would the trial court be surprised to learn that the Court of Appeals affirmed its ruling—but on preservation and timeliness grounds—when no party, nor the court itself,

had considered defendant's mistrial motion to have been untimely and instead addressed the merits? The answer here is yes. Neither the parties, nor the trial court, expressed any concern about the timeliness of defendant's mistrial motion. They were in the best position to evaluate whether taking up the issue on Tuesday morning, as opposed to Thursday afternoon, placed the court in a worse position to be able to address the error; no one so indicated. Instead, the trial court stated, on the record, that defendant had preserved the issue.

In short, all the policy objectives underlying the doctrine of preservation were satisfied here. Under the facts of this case, a defense objection on confrontation grounds under Article I, section 11, at the close of the state's case was sufficient to preserve that objection. As explained, defendant raised that objection by moving for a mistrial (or, alternatively, to strike the disputed testimony) during the interim time between the end of the trial proceedings one week and the start of proceedings the following week, with no other trial event, let alone a significant trial event, occurring. Neither the state at trial, nor the trial court, claimed surprise or asserted that the timing of defendant's motion for a mistrial prevented a fair adjudication on the merits. The state fully grappled with and responded to the merits of defendant's argument, and the trial court similarly considered the merits and issued a merits-based ruling.

We conclude that defendant's motion for a mistrial on confrontation grounds under Article I, section 11, was timely and therefore preserved the issue for appeal. The Court of Appeals erred in concluding otherwise and should have proceeded to address defendant's assignments of error concerning his motion for mistrial (or, alternatively, his motion to strike the disputed testimony).

The decision of the Court of Appeals is reversed in part and affirmed in part. This case is remanded to the Court of Appeals for further consideration.

**FLYNN, C.J.,** concurring.

I agree with the majority that defendant preserved his challenge to the trial court's denial of his motion for

mistrial. I also agree with the majority that defendant's motion for mistrial was timely under the circumstances of this case. But I write separately to question whether the two issues are as closely linked as some of our decisions may suggest.

As the majority explains, the preservation require-ment serves "to ensure procedural fairness" to both the parties and the trial court. ___ Or at ___ (citing *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (also recognizing that "preservation fosters full development of the record" for purposes of appeal)) (slip op at 10:19-21). "Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error alto-gether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples*, 345 Or at 219; *see also State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990) (emphasizing that the reasons for the rule requiring pres-ervation in the trial court are to "allow the adversary to present its position and to permit the court to understand and correct any error").

I agree with the majority that the purposes of pres-ervation were fully served when defendant moved for a mis-trial on the asserted basis that the state's introduction of hearsay statements without calling the declarant as a wit-ness violated defendant's rights under the Confrontation Clause. ___ Or at ___ (slip op at 16:13-14). The state had the opportunity to respond on the merits to defendant's motions, the trial court had the opportunity to rule on the merits, and the record is fully developed. Thus, applying our long-standing rules of preservation, there would be no question that defendant's claim of error was preserved for appeal. *See State v. Hitz*, 307 Or 183, 189, 766 P2d 373 (1988) (conclud-ing that the defendant preserved his claim of error because "[t]he state was not ambushed or misled or denied an oppor-tunity to meet defendant's argument in this case").

Nevertheless, the Court of Appeals pointed exclu-sively to the timing of defendant's motion, concluded without elaboration that the motion was untimely, and from there concluded that any challenge to the court's denial of a mis-trial necessarily was unpreserved. *See State v. Quebrado*,

323 Or App 308, 310 (2022) (nonprecedential memorandum opinion) (concluding that defendant's motion for mistrial was untimely and, "[a]ccordingly," rejecting defendant's challenge to the denial as "not preserved").

The court's equating of timeliness with preservation is understandable. A series of opinions from this court during the 1990s offered such cursory rejections of a defendant's challenge to the denial of a motion for mistrial that they arguably suggest that timeliness supplants our usual preservation analysis. *See, e.g.*, *State v. Barone*, 328 Or 68, 90, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000) (summarily announcing that the defendant's "mistrial request was untimely and, consequently, did not preserve the alleged underlying error for review"); *State v. Hayward*, 327 Or 397, 409, 963 P2d 667 (1998) (summarily announcing that the defendant's motion for mistrial "was not timely and hence was not preserved"); *State v. Williams*, 322 Or 620, 631, 912 P2d 364, *cert den*, 519 US 854 (1996) (summarily announcing that the defendant's motion for mistrial "was not timely and, thus, that claim of error was not preserved for review"); *State v. Walton*, 311 Or 223, 248, 809 P2d 81 (1991) (summarily announcing that, "[t]o preserve error, a motion for a mistrial must be timely").

But I would caution against so readily substituting a timeliness test for the preservation analysis we typically employ—as the Court of Appeals did here—especially when "untimely" is, itself, used as a categorical label for any motion that has not been made immediately after the concerning incident. The timeliness of a motion for mistrial fits within our framework for analyzing whether the mistrial issue was preserved for purposes of appeal; if nothing else, delay in bringing the motion may have eliminated the court's ability to correct the error with action short of a mistrial, which, in turn, could be a reason to conclude that any challenge to the denial of a mistrial was unpreserved. But not every error can be corrected short of a mistrial, and, conversely, not every delayed objection comes too late for the trial court to take lesser corrective action. As we long ago emphasized in explaining the rule of preservation, "[e]fficient procedures are instruments for, not obstacles to, deciding the merits,

particularly when the alternative is a criminal conviction that lacks a basis in law or in fact." *Hitz*, 307 Or at 188-89.

In prior cases, the Court of Appeals has taken a "more nuanced approach" to evaluating whether a motion for mistrial was preserved, including holding "that a mistrial motion was timely, even if not instantaneously made, when made under such circumstances that the underlying purpose of that preservation requirement is fulfilled." *State v. Sprow*, 298 Or App 44, 49, 445 P3d 351 (2019) (internal quotation marks and citations omitted). That reasoning appears to fold timeliness back into the preservation framework, and I agree with that approach.

Indeed, to the extent that this court's 1990s-era mistrial cases appear to compel a deviation from our established approach to preservation, they may not survive close scrutiny. Not one case in the series explains why the timing of a motion for mistrial can present a categorical obstacle to concluding that an appellant satisfied the purposes of preservation, which this court already had announced in *Hitz* and *Brown*. And the categorical approach to preservation was questionable from the start. *Walton*—which announced that, "[t]o preserve error, a motion for a mistrial must be timely," 311 Or at 248—is the earliest case in the series, and it attributes that categorical link to *State v. Montez*, 309 Or 564, 789 P2d 1352 (1990). But *Montez* does not support the proposition that *Walton* attributes to it, because the mistrial issue in *Montez* was *entirely* unpreserved—the defendant had not moved for a mistrial and later sought "plain error" review on appeal. 309 Or at 601. And the other cases in the series merely followed *Walton*'s lead—with *Williams* citing *Walton*, 322 Or at 631; *Hayward* citing *Williams*, 327 Or at 409; and *Barone* citing both *Walton* and *Williams*, 328 Or at 90. But defendant has not asked us to disavow *Walton* and its progeny, and the reasoning of the Court of Appeals in *Sprow* may illustrate that the *Walton* line of cases can simply be limited. Both are questions for another day. Therefore, I concur.