No. 875     October 8, 2025     99

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CARLOS ALBERTO QUEBRADO,
*Defendant-Appellant.*

Washington County Circuit Court
19CR34736; A174385

On remand from the Oregon Supreme Court, *State v. Quebrado*, 372 Or 301, 549 P3d 524 (2024).

Ricardo J. Menchaca, Judge.

Submitted on remand June 27, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Reversed and remanded.

**HELLMAN, J.**

This case is before us on remand from the Oregon Supreme Court. *State v. Quebrado*, 372 Or 301, 549 P3d 524 (2024) (*Quebrado II*). Defendant was convicted of one count of second-degree assault, two counts of unlawful use of a weapon, and one count of fleeing or attempting to elude a police officer. Defendant appealed his convictions, arguing, among other things, that the trial court erred in denying his motion for a mistrial, or alternatively, motion to strike testimony that he asserted violated his state confrontation rights. We concluded that defendant's motions were untimely and therefore not preserved, and affirmed his convictions in a nonprecedential opinion. *State v. Quebrado*, 323 Or App 308, 310 (2022) (nonprecedential memorandum opinion) (*Quebrado I*).

Defendant petitioned for review, challenging our ruling on the issue of preservation.[1] The Supreme Court took review and concluded that "defendant's motion for a mistrial on confrontation grounds under Article I, section 11, was timely and therefore preserved the issue for appeal." *Quebrado II*, 372 Or at 315. That court reversed in part, affirmed in part, and remanded the case to us to consider the merits of defendant's confrontation-based arguments. Therefore, the issues before us on remand are whether defendant's Article I, section 11, confrontation rights were violated, and, if so, whether the trial court abused its discretion in denying his motion for a mistrial, or, alternatively, his motion to strike the disputed testimony. On remand, we conclude both that the admission of the testimony violated defendant's right under Article I, section 11, to confront witnesses against him and that the trial court abused its discretion when it denied defendant's motions. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

The charges in this case arose when defendant's girlfriend, Sisco, got into an altercation inside a bar with E and D, who were other patrons of the bar and strangers

---

[1] Defendant's petition for review also presented a second question related to the trial court's refusal to answer a jury question. The Supreme Court declined to reach that question. *Quebrado II*, 372 Or at 305 n 1. Nor do we address that issue because it may not arise again on remand.

to defendant and Sisco. After the altercation, the parties moved to the parking lot where Sisco continued to yell racial slurs at E and D. Defendant eventually drove away from the bar with Sisco still yelling at E and D from the passenger window. E and D left several minutes later. As E and D drove home, defendant and Sisco began to pursue E and D in what is colloquially referred to as a "car chase." At one point during the car chase, Sisco fired a shotgun at E and D from the passenger window. Shotgun pellets hit E in the forehead and hand. Not long after, police apprehended defendant and Sisco, and the state charged them with attempted murder, second-degree assault, unlawful use of a weapon, and attempting to elude a police officer. Defendant was charged as an accomplice to all the crimes except attempting to elude, for which he was charged as the principal. Sisco entered a plea deal contingent on her agreement to testify against defendant; defendant exercised his constitutional right to a jury trial.

At trial, D testified that, at the bar, he had mistaken Sisco for a friend and playfully flicked her hair. D said that in response, Sisco smacked D's hat off his head and yelled at him that "I'll kill you, you stupid f-ing N-word." The state also elicited testimony from E, D, and a police officer that, as defendant was rummaging in the back seat of his car in the bar parking lot, Sisco told defendant, "No, not here" or "Not right here. Not right here." Defendant did not contemporaneously object to the statements on confrontation grounds because the state had indicated that it would call Sisco as a witness.

Ultimately, however, the state rested its case without calling Sisco as a witness. After the state rested, defendant moved for a mistrial, or alternatively to strike D's testimony that Sisco said, "I'll kill you, you stupid f-ing N-word" and the testimony that Sisco told defendant "No, not here" or "Not right here. Not right here," in the parking lot.[2] Defendant took the position that both statements were hearsay, that the state had failed to prove Sisco's unavailability, and that, as a result, introduction of those statements

---

[2] Along with his motion to strike, defendant also sought a curative instruction to the jury; however, defendant noted that the motion to strike and curative instruction seemed to be an inadequate remedy.

violated his confrontation rights under Article I, section 11. The state disputed that the statements were hearsay, instead arguing that they were co-conspirator statements and thus Article I, section 11, did not prohibit their admission. The trial court denied the motions and declined to give a curative instruction, explaining, "I don't find it's hearsay and I don't find it's testimonial, the two statements at issue."

In closing argument, the state urged the jury to find that Sisco had intended to kill and harm E and D and that defendant aided and abetted her commission of those crimes when he drove his car near E and D's car while Sisco shot at them.

Defense counsel told the jury that defendant had been caught in the middle of a dispute between his girlfriend and a stranger, and that he never intended to harm or kill E and D. Counsel explained that when defendant was rummaging in his car, he was looking for his phone to call the police. Defense counsel challenged E and D's veracity and suggested that D was aggressive and much more responsible for the events than the state claimed. Relying on defendant's testimony and recordings of E's 9-1-1 call, defense counsel argued that the car chase was in fact defendant trying to flee from E and D, who kept pursing him, and that defendant did not know that Sisco planned to shoot at E and D until she pulled out the gun in the middle of the car chase.

In rebuttal, the state argued that Sisco had "no idea that this shotgun was in [defendant's] vehicle until [defendant] pulled it out" and that when Sisco said "No, not here," it was because "she [saw] the defendant himself retrieving the shotgun." The state asserted that her statement proved defendant was either "about to use the gun himself" or that he intended to make the shotgun "readily accessible" for Sisco to use later.

The jury acquitted defendant of the attempted first-degree murder charges and convicted him of second-degree assault and unlawful use of a weapon as an accomplice, and of attempting to elude a police officer as a principal.

On remand, we now consider whether the disputed testimony violated defendant's confrontation rights under

Article I, section 11, and whether the trial court abused its discretion in denying defendant's motion for a mistrial or his motion to strike the testimony and give a curative instruction.

## ANALYSIS

A.  *Hearsay and the right to Confrontation under Article I, Section 11*

Article I, section 11, provides that "[i]n all criminal prosecutions, the accused shall have the right to \*\*\* meet the witnesses face to face." One of the animating principles behind the adoption of the confrontation right was "to limit and condition the use of prior testimony in lieu of live witness testimony at trial." *State v. Copeland*, 353 Or 816, 829, 306 P3d 610 (2013). Under that provision, an out-of-court statement made by a declarant who does not testify at trial is admissible only if (1) the declarant is "unavailable," and (2) the statements have "adequate indicia of reliability." *State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985) (adopting, on independent state grounds, the confrontation test initially articulated by the United States Supreme Court in *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), *overruled by Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004)); *see also State v. Belden*, 369 Or 1, 9-10, 499 P3d 783 (2021) (noting that notwithstanding *Crawford*, Oregon courts continue to adhere to the *Campbell/Roberts* test).

Because the confrontation right applies to hearsay statements, the threshold question in a confrontation analysis is whether the statements at issue constitute hearsay. *State v. Dimolfetto*, 342 Or App 456, 500, ___ P3d ___ (2025). Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted," OEC 801(3), and a "statement" is "[a]n oral or written assertion," OEC 801(1)(a).

Determining hearsay for purposes of a constitutional analysis is not coextensive with a statutory analysis. That is, whether a statement is hearsay under the evidence code does not automatically determine whether a statement is hearsay for purposes of Article I, section 11. *See State v.*

*Wyant*, 300 Or App 1, 13 n 2, 452 P3d 471 (2019), *rev den*, 366 Or 451 (2020) (recognizing the "complex relationship" between the confrontation clause and hearsay rules and observing that nonhearsay may not necessarily be "automatically admissible in the context of a confrontation clause challenge"). In a constitutional analysis, we are concerned with what the framers of the Oregon Constitution would have considered to be hearsay, not with what a modern legislature has defined as hearsay. *See Copeland*, 353 Or at 822 (when construing a provision of the Oregon Constitution, we examine the text "in light of the meaning understood by the framers * * * [to] inform our application of the constitutional text to modern circumstances"). Therefore, to determine whether the statements at issue in this case are hearsay for purposes of Article I, section 11, we must consider whether the framers could have characterized them as such.

B.   *The statement "I'll kill you, you stupid f-ing N-word" was hearsay.*

        The first challenged statement is Sisco's declaration to D that "I'll kill you, you stupid f-ing N-word" in response to him flicking her hair in the bar. The parties dispute whether that statement was offered for its truth, as required for hearsay. The state argues that the statement was a verbal act that has legal significance merely because it was made and that it was not offered for its truth but as circumstantial evidence that Sisco was angry at D. We disagree with the state's arguments.

        Although the statement could be used to demonstrate that Sisco was angry at D, that was not the sole purpose of introducing it. To prove that defendant was an accomplice to attempted murder, the state had to prove that defendant had the specific intent to "promote or facilitate" the attempted murder and that he "aid[ed] or abet[ted] or agree[d] or attempt[ed] to aid and abet" Sisco in committing the crime. ORS 161.155(2)(b); *State v. Lopez-Minjarez*, 350 Or 576, 582, 260 P3d 439 (2011) (holding that ORS 161.155(2)(b) "requires a specific intent: the intent to promote or facilitate the commission of the crime committed by another"). That necessarily required proof that Sisco intended to *kill* E and D, rather than to just threaten or harm them in another

way. Sisco's statement, "I'll kill you," made to D mere hours before she shot at him with a shotgun from a moving vehicle was evidence of that intent, but only if the jury believed that Sisco meant it when she threated to kill D.[3] We have previously held that statements qualify as hearsay when they contain assertions that support the state's theory of the case only if the jury believed in the truth of the assertion. *See State v. Kaino-Smith*, 277 Or App 516, 523, 371 P3d 1256 (2016) (concluding that statements were offered for their truth because they supported the proponent's position only if considered for their truth); *State v. Causey*, 265 Or App 151, 154-55, 333 P3d 345 (2014) (text messages were offered for their truth because they were relevant circumstantial evidence only if the jury accepted the truthfulness of the content of the messages). Moreover, the jury was not instructed that they could only consider Sisco's statement as circumstantial evidence that Sisco was angry. Thus, the statement in which Sisco told D that she would kill him was offered for the truth of the matter asserted and was hearsay.

C.    *The statement "No, not here" or "Not right here. Not right here," was hearsay.*

We turn next to the second statement, in which Sisco told defendant, "No, not here" or "Not right here. Not right here," while defendant was rummaging in the back seat of his car. In *Quebrado I*, we determined that there was sufficient evidence to support the trial court's admission of that statement as a coconspirator statement under OEC 801(4)(b)(E). *Quebrado I*, 323 Or App at 310. The Supreme Court's decision in *Quebrado II* did not disturb that holding.

That statutory analysis, however, does not answer the constitutional issue now before us. OEC 801(4)(b)(E) currently defines a co-conspirator statement as "not hearsay." But co-conspirator statements were historically treated "as an *exception* to the hearsay rule." *State v. Cornell*, 314 Or 673, 683, 842 P2d 394 (1992) (emphasis added). Indeed, the Oregon Supreme Court recognized that historical understanding

---

[3] Indeed, when the state argued against defendant's motion for a mistrial it took the position that this statement was made "in furtherance of the conspiracy," indicating that its purpose in introducing the statements was to prove that defendant intended to, and did, help Sisco try to kill E and D.

when it applied a constitutional analysis to determine whether introduction of co-conspirator statements violated Article I, section 11. *Id.* at 682-83. Therefore, although co-conspirator statements are currently "not hearsay" under OEC 801(4)(b)(E), a coconspirator statement may nevertheless constitute hearsay for purposes of Article I, section 11, if the statement meets the historical definition of hearsay.

In this case, the state argues that the statement, "No, not here" or "Not right here. Not right here," is not a "statement" at all because it contains no assertive content, but rather is a command incapable of being true or false. According to the state, Sisco was simply instructing defendant not to take the gun out in the parking lot. We agree that, on its face, the statement does appear to be a command, but that does not end the inquiry. In *State v. Schiller-Munneman*, 359 Or 808, 816, 377 P3d 554 (2016), the Supreme Court addressed an analogous issue of whether questions, which typically are not considered assertions, could nevertheless be assertions for hearsay purposes. The Supreme Court determined that a communication may be found to be an assertion, even though not phrased as such, "if it contains—expressly or impliedly—factual content that amounts to an assertion." *Id.* (citing Laird C. Kirkpatrick, *Oregon Evidence* § 801.01[3][b], 699 (6th ed 2013)). In *Schiller-Munneman*, the defendant was charged with rape, and one of the communications at issue was a text message from the victim to defendant asking, "Why did you do that to me?" *Id.* at 817 (brackets omitted). The court concluded that the question, when considered in the context of the parties' arguments, impliedly included an assertion that the contact was nonconsensual and therefore constituted a "statement" for purposes of the hearsay rule. *Id.*

Here, in context, Sisco's communication to defendant, "No, not here" or "Not right here. Not right here," contained the implied assertion that defendant intended to use the gun against E and D. In fact, the state told the jury in closing that there was "no other reason" for Sisco to say that to defendant "except that he was about to use the gun himself." Therefore, we conclude that the second statement contains an assertion, was offered to prove the truth of the

matter asserted, and consequently, is hearsay for purposes of the confrontation right.

D. *The hearsay statements were inadmissible under Article I, section 11, because Sisco was available to testify at trial.*

Having determined that both statements constitute hearsay for purposes of the confrontation right, we turn now to whether the statements were admissible. Under Article I, section 11, hearsay testimony is admissible over a confrontation objection only if the declarant is unavailable and the statements have adequate indicia of reliability. *Campbell*, 299 Or at 648. The burden of demonstrating unavailability falls on the state. *Belden*, 369 Or at 11; *see also Campbell*, 299 Or at 651 ("The defendant has no burden to prove unavailability.").

Sisco was available at the time of defendant's trial. Her plea bargain explicitly required her to testify against defendant, and she was in jail under the state's subpoena. Because the state failed to demonstrate that Sisco was unavailable, we need not consider whether the statements had adequate indicia of reliability. The admission of Sisco's out-of-court statements violated defendant's Article I, section 11, confrontation rights.

E. *The trial court abused its discretion when it denied defendant's motion for a mistrial, or in the alternative to strike Sisco's testimony, because its decision was based on an incorrect determination that the statements were not hearsay. That ruling deprived defendant of a fair trial.*

Because defendant expected the state to call Sisco to testify, he did not contemporaneously object to the violation of his confrontation rights, but rather moved for a mistrial or, alternatively, to strike the testimony after it became apparent that the state would not call Sisco to testify. As noted, the Supreme Court concluded that, under the circumstances of this case, defendant's confrontation objection was timely and preserved the issue for appeal. *Quebrado II*, 372 Or at 315. We turn now to the trial court's denial of those motions.

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *State v. Worth*, 231 Or App 69, 74, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010). We review the denial of a motion to strike testimony under that same standard. *State v. Cox*, 337 Or 477, 490, 98 P3d 1103 (2004), *cert den*, 546 US 830 (2005). When the trial court's exercise of discretion is based on a mistaken premise of law, and the effect of that error is to deny defendant a fair trial, the court's decision does not fall within the range of legally correct choices and does not produce a permissible, legally correct outcome. *Worth*, 231 Or App at 75; *see also State v. Johnson*, 199 Or App 305, 313-14, 111 P3d 784, *rev den*, 339 Or 701 (2005) (abuse of discretion to deny the defendant's motion for a mistrial where the court had erroneously admitted a codefendant's confession in violation of the defendant's confrontation rights).

Here, in response to defendant's motions, the trial court denied the motion for a mistrial and motion to strike testimony and declined to give a curative instruction. The trial court's ruling was based on its legal determination that neither statement was hearsay. But as we explained above, both challenged statements are hearsay for purposes of the confrontation right under Article I, section 11. The trial court denied defendant's motions based on an incorrect legal premise, which is itself an abuse of discretion. *Worth*, 231 Or App at 75.

The trial court's rulings deprived defendant of a fair trial. *See State v. Kurz*, 342 Or App 772, 785, ___ P3d ___ (2025) (evaluating the "seriousness of the prejudice and the manner in which the court sought to cure the error, with the decisive issue [being] whether defendant's ability to receive a fair trial was impaired"). The improperly admitted statements supported the state's position that Sisco intended to kill and otherwise harm E and D and that defendant intended to help her do so.[4] Indeed, the prosecutor relied on Sisco's statement "not here" in closing to urge the jury to

---

[4] We note that Sisco's "I'll kill you" statement to D helps establish her intent to kill *or* harm E and D. Thus, the statement is prejudicial to defendant notwithstanding his acquittal on the attempted murder charges, because it suggests that Sisco also had the intent to harm E and D, a prerequisite to proving defendant was her accomplice on the second-degree assault charge.

find that defendant knew of Sisco's plans to kill and/or harm E and D and intended to help her accomplish it.

Moreover, defendant's defense was primarily based on his own testimony that he was unaware of Sisco's plans and merely trying to flee from E and D when she began shooting. The core of the defense depended on defendant's credibility, and the state used Sisco's statements to undermine that credibility. In the face of the challenge to his defense, and to his credibility, defendant was not afforded the opportunity to cross-examine Sisco for a more complete explanation of her statements. That deprivation is inconsistent with one of the "animating principles" of the confrontation right—"to limit and condition the use of prior testimony in lieu of live witness testimony at trial." *Copeland*, 353 Or at 829. In light of that error, defendant did not receive a fair trial.

Reversed and remanded.